STATE OF ARKANSAS for Use and Benefit of TEMPLE et al. v. CENTRAL SURETY & INSURANCE CORP. OF KANSAS CITY, MO., et al.

Civ. A. No. 541.

United States District Court
W. D. Arkansas, El Dorado Division.

Jan. 31, 1952.

Paul K. Roberts, El Dorado, Ark., for plaintiffs.

DuVal L. Purkins, Warren, Ark., Carroll Hollensworth, Warren, Ark., for defendants Roy Green, W. F. Lyon, W. L. Little and Central Surety & Insurance Corporation of Kansas City, Mo.

Bridges, Bridges, Young & Gregory, Pine Bluff, Ark., for defendant Hartford Accident & Indemnity Co.

Ike Murry, Atty. Gen., for defendant, Phillip Gray.

Moore, Burrow, Chowning & Mitchell, Little Rock, Ark., for defendant Standard Accident Ins. Co. of Detroit, Mich.

JOHN E. MILLER, District Judge.

The real parties in interest as plaintiffs are W. L. Temple, his wife Vashti Temple, and their children, Carroll Gene Temple and Connie Lynn Temple. Defendants are Roy Green, Sheriff of Bradley County, Arkansas; W. F. Lyon, City Marshal of Warren, Arkansas; Phillip Gray, member of the Arkansas State Police; W. L. Little, who, it is alleged, "is now and was in the year 1950 acting as a Deputy Sheriff of the said Roy Green but was not duly appointed and qualified as the said Roy Green had not recorded such appointment of W. L. Little in the official records of the Circuit Clerk of Bradley County, Arkansas"; the Central Surety and Insurance Corporation of Kansas City, Missouri, on official bond executed by Roy Green as principal and this

defendant as surety; the Hartford Accident and Indemnity Company, on official bond executed by W. F. Lyon as principal and this defendant as surety; and the Standard Accident Insurance Company of Detroit, Michigan, on official bond executed by Phillip Gray as principal and this defendant as surety.

Plaintiffs base their claims upon 28 U.S.C.A. § 1343 and 8 U.S.C.A. §§ 41, 43, 47(3) and 48. They allege that on September 9, 1950, while driving in their truck, they were forced off the highway by an automobile driven by W. L. Little; that thereafter W. L. Little threatened plaintiffs with words and with a drawn revolver, hammer cocked, and "did unlawfully, forcibly and falsely restrain the plaintiffs of their liberty, and did imprison the plaintiffs for a period of ten minutes on Highway 15, unlawfully, forcibly and against the plaintiffs' wills", and the said W. L. Little attempted to strike and did strike the plaintiff, W. L. Temple, two blows. It is further alleged that the defendants, Roy Green, W. F. Lyon and Phillip Gray, conspired with W. L. Little to deprive these plaintiffs of "their rights as citizens" and of "their liberty" and the overt acts of W. L. Little were pursuant to said conspiracy, and that the said defendants "conspired with, encouraged, aided and abetted the defendant, W. L. Little, in the execution of his unlawful acts". Also, it is alleged that W. F. Lyon and Phillip Gray drove by the scene of the occurrence on the highway, and although they were well aware of "the precariousness of plaintiffs' positions" failed and neglected to aid them; that after being assaulted and beaten on the highway plaintiffs drove to the county court house where defendant, Little, further assaulted plaintiffs and the defendants, Green, Lyon and Gray, realizing this and having the power to prevent the same, failed and neglected to do so. Plaintiff alleges that "the conspiracy entered into and the overt acts committed by the said defendants were done under the pretense of executing the law in their official capacities and under color of law". And, plaintiffs allege that they were not charged with any specific violation of the law and that they were not violating any law, nor was any

warrant ever issued and served upon them. The prayer is for actual and punitive damages in varying sums by the various plaintiffs against the various defendants.

Without setting forth all that has transpired since the filing of the complaint, suffice it to say that the various defendants have now filed answers, and the defendants, Roy Green, W. L. Little, W. F. Lyon, Central Surety Insurance Corporation, and Hartford Accident & Indemnity Company have filed motion for summary judgment, which motion is based upon (1) the pleadings, (2) affidavit of Roy Green, (3) affidavit of W. L. Little, (4) affidavit of W. F. Lyon, and (5) discovery depositions of W. L. Temple and Vashti Temple. The respective parties have filed briefs in support of and in opposition to the motion for summary judgment, and the motion is now before the court for disposition.

The court has read and considered the pleadings and the various affidavits and depositions. And, from the study of this material, it appears to the court that, if at the trial the plaintiffs produce no evidence other than that disclosed here, it entertains grave doubts whether the plaintiffs will have made a case sufficient to entitle them to relief under the various statutes relied upon. However, without going into great detail as to the evidence disclosed by the affidavits and depositions, which is neither necessary nor warranted for purposes of the disposition of this motion, the court is not convinced that there is no genuine issue of fact.

As aptly stated by the Court of Appeals in Dulansky v. Iowa-Illinois Gas & Electric Co., 8 Cir., 191 F.2d 881, 883:

"The proceeding on motion for summary judgment is in the nature of an inquiry in advance of the trial for the purpose of determining whether there is a genuine issue of fact and not for the purpose of determining an issue of fact. (Citing cases.)

"As a summary judgment presupposes that there is no genuine issue of fact, findings of fact and conclusions of law are not required. It was not the purpose of this rule to require a party to try his case on affidavits with no opportunity to cross-ex-

amine witnesses; in fact, only in a rare case can it be determined by affidavit that the evidence available will be such as to entitle the movant, if the case were tried on its merits to a jury, to a directed verdict because there has been no opportunity to cross-examine the witnesses."

■ Also pertinent is the statement by Judge Parker in Pierce v. Ford Motor Co., 4 Cir., 190 F.2d 910, 915: "It is only where it is perfectly clear that there are no issues in the case that a summary judgment is proper. Even in cases where the judge is of opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment, which was never intended to enable parties to evade jury trials or have the judge weigh evidence in advance of its being presented."

■ The court feels that it must give plaintiffs every opportunity to make out a case, and in view of the allegations of the complaint, and notwithstanding their depositions, it is at least possible that they may be able to do so.

Plaintiffs rely upon Secs. 41, 43, 47(3) and 48 of 8 U.S.C.A., and Sec. 1 of the 14th Amendment to the Constitution of the United States.

The 14th Amendment contains three separate and distinct provisions guaranteeing rights of persons and property. It provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

8 U.S.C.A. § 41 guarantees equal rights to all persons within the jurisdiction of the United States as are enjoyed by white citizens, and since all parties involved in this case are white, as appears from the information now before the court, this section will not be applicable.

8 U.S.C.A. § 43 covers action under color of State law which subjects any person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws". It is noted that Sec. 43 is expressly limited to action under color of State law.

■ 8 U.S.C.A. § 47(3) speaks of conspiracies "for the purpose of depriving * * * any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws". It contains no express provision of action under color of State law. However, it appears that the Supreme Court in Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 942, 95 L.Ed. 1253, has sharply restricted, to say the least, the applicability of this section to individual, as distinguished from state, action. While it does not appear that the plaintiffs make any assertion of liability because of individual action, the limited scope of the activities charged here could not suffice. As in the Collins case, supra, the plaintiffs' rights "under the laws and to protection of the laws" would remain the same as every other Arkansan and subject to vindication in the same way and with the same effect as such other persons. Thus, as under Section 43, it would appear that Section 47(3) could be applicable here only if defendants acted under color of State law. In addition, plaintiffs will have to make a sufficient showing of a deprivation of "equal protection" or "privileges and immunities", and this appears unlikely from the information now available. Deprivation of equal protection contemplates a purposeful and systematic discrimination designed to favor one individual or class over another. Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497. And, as the court understands the law applicable to the situation apparently present in this case, the privileges and immunities spoken of are those incident to citizenship in the United States, as distinguished from those incident to citizenship in a State. It is necessary to examine the particular "rights" of the plaintiffs alleged to have been violated. They complain of defendant Little restraining their liberty by imprison-

ing them on the highway for a short time against their wills, and of Little's action in threatening them all and actually striking plaintiff W. L. Temple. The "right" to be secure from imprisonment or assault by one acting under color of State law (if it be assumed that Little or the other defendants were so acting) in and of itself is not a privilege or immunity peculiar to citizenship in the United States. Such privileges include the right of citizens to vote in congressional elections, to peaceably assemble and petition the government for redress of grievances, and the like, and this restraint and punishment does not appear to have any connection with any such "privileges and immunities." See: United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588; Maxwell v. Dow, 176 U.S. 581, 20 S.Ct. 448, 44 L.Ed. 597; Hague, Mayor, v. Committee for Industrial Organization, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423, and concurring opinion of Mr. Justice Stone, 307 U.S. at page 518, 59 S.Ct. 965; United States v. Williams, 341 U.S. 70, 71 S.Ct. 581, 95 L. Ed. 758. It is noteworthy that Section 47 (3) makes no reference to deprivation of life, liberty or property without due process of law, which clause, of course, may and often does extend its protection to "rights" not constituting privileges and immunities of citizens of the United States.

8 U.S.C.A. § 48 covers the case of a person who has knowledge of and the power to prevent the wrongs mentioned in Section 41 but fails and neglects to do so. By virtue of the specific reference to Section 47, this section will be applicable only if and to the extent that Section 47 is applicable. The difficulties in this respect have been previously mentioned.

■ As previously pointed out, under Section 43 (and Section 47, if applicable, which, as above stated does not appear likely) action under color of State law is necessary. The Supreme Court, in Screws v. United States, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495, said: "It is clear that under 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded. Acts of officers who undertake to perform their official duties are included

whether they hew to the line of their authority or overstep it." And, in United States v. Classic, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L.Ed. 1368: "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law."

In these cases the court had before it Section 20 of the Criminal Code, 18 U.S.C.A. § 242, but the operative language of this section and 8 U.S.C.A. § 43 is for present purposes identical and is to be construed as in pari materia. Picking v. Pennsylvania R. Co., 3 Cir., 151 F.2d 240, 248; McShane v. Moldovan, 6 Cir., 172 F.2d 1016. In both cases officers of the State misused power that they were authorized to exercise in the performance of their official duties. In the Classic case, supra, State election officials were charged with failure to count the votes as cast, alteration of ballots, and false certification of the votes; in the Screws case, supra, officers assaulted and severely beat the defendant after an arrest. In the latter case the court pointed out that since, according to the officers' own admissions, they assaulted the prisoner to keep him from escaping and to protect themselves, they were discharging a duty placed upon them by Georgia law. "We are not dealing here with a case where an officer not authorized to act nevertheless takes action. Here the state officers were authorized to make an arrest and to take such steps as were necessary to make the arrest effective. They acted without authority only in the sense that they used excessive force in making the arrest effective." Screws v. United States, supra, 325 U.S. at page 111, 65 S.Ct. at page 1040. Likewise, in Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774, the court approved the finding of the jury under proper instructions in the District Court that the defendant, holder of a special police officer's card issued by the City of Miami, Florida, was acting under color of law. In doing so, the court stated, 341 U.S. at page 99, 71 S.Ct. at page 578: "It is common practice, as we noted in Labor Board v. Jones & Laughlin Co., 331 U.S. 416, 429, 67 S.Ct. 1274, 1281, 91 L.Ed.

1575, for private guards or detectives to be vested with policemen's powers. We know from the record that that is the policy of Miami, Florida. Moreover, this was an investigation conducted under the aegis of the State, as evidenced by the fact that a regular police officer was detailed to attend it. We need go no further to conclude that the lower court, to whom we give deference on local law matters, see Gardner v. New Jersey, 329 U.S. 565, 583, 67 S.Ct. 467, 476, 91 L.Ed. 504, was correct in holding that petitioner was no mere interloper but had a semblance of policeman's power from Florida. There was, therefore, evidence that he acted under authority of Florida law; and the manner of his conduct of the interrogations makes clear that he was asserting the authority granted him and not acting in the role of a private person." It is noted that the court emphasized that Florida had conferred the authority on the defendant, which he was exercising, so that he "was no mere interloper".

■ Furthermore, as pointed out in the Screws case, supra, we are concerned only with those acts done under "color of State law" which deprive a person of some right secured by the Constitution or laws of the United States. As expressed therein, 325 U.S. at pages 108–109, 65 S.Ct. at page 1039: "Violation of local law does not necessarily mean that federal rights have been invaded. The fact that a prisoner is assaulted, injured, or even murdered by state officials does not necessarily mean that he is deprived of any right protected or secured by the Constitution or laws of the United States. * * * It is only state action of a 'particular character' that is prohibited by the Fourteenth Amendment and against which the Amendment authorizes Congress to afford relief. Civil Rights Cases, U. S. v. Stanley, 109 U.S. 3, 11, 13, 3 S.Ct. 18, 21, 23, 27 L.Ed. 835. Thus Congress in § 20 of the Criminal Code did not undertake to make all torts of state officials federal crimes. It brought within § 20 only specified acts done 'under color' of law and then only those acts which deprived a person of some right secured by the Constitution or laws of the United States."

Under 8 U.S.C.A. § 43, the "rights * * secured by the Constitution" usually relied upon is the "due process" guaranteed by the 14th Amendment, and, again frankly speaking, it appears to the court that if these plaintiffs have a claim, it falls in this category. Regarding due process the Supreme Court in Rochin v. California, 72 S.Ct. 205, recently said: "Due process of law is a summarized constitutional guarantee of respect for those personal immunities which, as Mr. Justice Cardozo twice wrote for the Court, are 'so rooted in the traditions and conscience of our people as to be ranked as fundamental', Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674, or are 'implicit in the concept of ordered liberty'. Palko v. Connecticut, 320 [302] U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288."

In the Rochin case, supra, the obtaining of evidence by "stomach pumping" and the use thereof to convict the defendant was held to be conduct that "shocks the conscience" and violative of due process. In the Screws case, supra, the unmerciful beating of a handcuffed prisoner justified a like conclusion. In Williams v. United States, 341 U.S. 97, at page 101, 71 S.Ct. 576, 579, 59 L.Ed. 774, in condemning brutal beatings to obtain confessions, the court stated: "It is as plain as a pikestaff that the present confessions would not be allowed in evidence whatever the school of thought concerning the scope and meaning of the Due Process Clause. This is the classic use of force to make a man testify against himself. The result is as plain as if the rack, the wheel, and the thumb screw —the ancient methods of securing evidence by torture, Brown v. Mississippi, 297 U.S. 278, 285–286, 56 S.Ct. 461, 464–465, 80 L.Ed. 682; Chambers v. Florida, 309 U.S. 227, 237, 60 S.Ct. 472, 477, 84 L.Ed. 716—were used to compel the confession. * * * But where police take matters in their own hands, seize victims, beat and pound them until they confess, there cannot be the slightest doubt that the police have deprived the victim of a right under the Constitution. It is the right of the accused to be tried by a legally constituted court, not by a kangaroo court."

On the other hand, in Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 1360, 93 L.Ed. 1782, the court repeated its holding in Adamson v. California, 332 U.S. 46, 67 S. Ct. 1672, 91 L.Ed. 1903, that "The notion that the 'due process of law' guaranteed by the Fourteenth Amendment is shorthand for the first eight amendments of the Constitution and thereby incorporates them has been rejected by this Court again and again, after impressive consideration", and refused to condemn a state court prosecution wherein evidence obtained from an unreasonable search and seizure had been admitted, even though such evidence would have been barred in the Federal courts as violative of the 4th Amendment.

From the above it is obvious that the "officer" must be acting under some authority of the State, whether he stays within or exceeds the bounds thereof, and his action must violate some "right" of the defendant which is "fundamental" or "implicit in the concept of ordered liberty". Thus, would an "imprisonment", effectuated by detaining one against his will for a few minutes, plus the striking of two or three blows with a drawn revolver, suffice, even if committed by a duly authorized officer of the State? If done in the course of effecting an arrest, under circumstances clearly showing that no such force was necessary, or if done to force a confession, or if done to administer punishment for a supposed violation of the law without a trial by a legally constituted court, perhaps it might. However, if no such "fundamental right" of the plaintiff is violated by such conduct, it is doubtful that a cause of action under Section 43 would lie. The court in Williams v. United States, 341 U.S. 97, 101, 71 S.Ct. 576, 579, 95 L.Ed. 774, recognized such a doubt in a criminal prosecution, "Some day the application of § 20 to less obvious methods of coercion may be presented and doubts as to the adequacy of the standard of guilt may be presented. There may be a similar doubt when an officer is tried under § 20 for beating a man to death. That was a doubt stirred in the Screws case; and it was the reason we held that the purpose must be plain, the deprivation of the constitutional right willful."

Of course, normally a sufficient answer would be that the officer is simply acting within the ambit of his personal pursuits, which acts are excluded, but there may be a situation whereby he is acting officially but nevertheless his action, when considered in the light of the right or rights involved and the extent of their impairment, is not such as "shocks the conscience", and, therefore, not a violation of due process.

It appears from the information now before the court that the defendant W. L. Little was not a duly authorized and qualified deputy sheriff or other state officer, although he apparently held himself out to be such. The requirements in this respect sufficiently appear from the previous discussion, and the cases cited therein, and the court does not feel that additional comment is necessary. However, it might be observed that if plaintiffs establish their allegations of a conspiracy, it would seem that all members thereof would be responsible for the overt acts of one pursuant thereto, and the court sees no reason why acts committed by an individual not an officer, but pursuant to and in furtherance of a conspiracy entered into by admitted officers, would not be "under color of law", provided, of course, the other essentials were present. In other words, in such a case an admitted officer could not avoid responsibility merely because he did not physically commit the act, because by virtue of the conspiracy and the execution thereof, he would be responsible to the same extent as though he had actually done so. But, as in the case of an individual officer, personal acts, as distinguished from official, would be plainly excluded, and the same considerations, discussed above, involved in the determination of "under color of law" and "due process" would be applicable.

The court has observed that the various defendant bonding companies have raised the question of their liability under the provisions of the bonds executed by them, but the court does not deem it necessary to pass on these questions at this time, since these questions may be properly determined at the trial.

The above discussion is not intended to prevent any of the parties from presenting the case at the trial in accordance with their own theory, but the court has found through experience that it is helpful in the disposition and trial of cases to outline as nearly as possible its understanding of the law applicable to the issues made by the pleadings.

The motion for summary judgment should be overruled and such an order is being entered today.