Isaac HUEY, as Legal Representative of Jerome Huey, Deceased, Plaintiff,

v.

Joseph BARLOGA, John Karner, Ted Zaremba, Otto Danick, Ben Darda, Roland Brani, Robert Holocek, Christy Berkos, Stanley Pera, J. F. Kimbark, Frank Mungai, Frank Murin and Joe S. Kral, Defendants.

No. 67 C 906.

United States District Court
N. D. Illinois, E. D.

Dec. 27, 1967.

John Fitzgerald, Chicago, Ill., for plaintiff.

John R. Caffery, Clausen, Hirsh, Miller & Gorman, Chicago, Ill., for defendants.

## OPINION

WILL, District Judge.

The plaintiff brings this action under the Civil Rights Act, 42 U.S.C. §§ 1985, 1986, seeking the recovery of damages for the death of his son, Jerome Huey. Plaintiff is the legal representative of the deceased. The defendants were the trustees, employees, and agents of the Town of Cicero, Illinois, at the time of Jerome Huey's death. All the parties are citizens of Illinois and jurisdiction is invoked under 28 U.S.C. §§ 1331 and 1343. Pursuant to Rule 12 of the Federal Rules of Civil Procedure, the defendants have filed a motion to dismiss contending (1) the court lacks jurisdiction of the subject matter of the suit, and (2) the complaint fails to state a claim upon which relief can be granted.

The incident which gives rise to this suit occurred on May 25, 1966. Jerome Huey, a negro college student from Chicago, was seeking employment in Cicero. As he was walking along the sidewalk of Laramie Avenue at approximately 10:00 p. m. on his way to the Burlington Railroad Employment offices near 26th Street, a group of four or more white youths attacked him and beat him with

their fists and a baseball bat. Huey was seriously injured about his face, head and body as a result of this assault. Four days later he died from these injuries.

The complaint is drawn in two counts. The first asserts an action under 42 U.S.C. § 1985(3) for a civil conspiracy to violate Jerome Huey's constitutional rights. The relevant portions of the first count allege: that the defendants knew or, by the exercise of reasonable care, should have known that the presence of negroes on the public streets of Cicero constituted a hazard to their personal safety and to public tranquility; that the defendants knew or should have known that large numbers of negroes entered and departed from Cicero daily pursuant to gainful employment; that the defendants were empowered and authorized under the Constitution and the laws of Illinois to prevent or aid in preventing the denial of equal protection of the laws to Jerome Huey because of his race; that the defendants could have secured the same privileges and immunities that are secured to white persons in Cicero by the exercise of reasonable diligence; that the defendants acting in concert wrongfully neglected to prevent or aid in preventing the commission of wrongs against Jerome Huey; and that the conspiracy of defendants, wilfully acting or omitting to act, in concert, allegedly deprived Jerome Huey of his right to peaceably travel the streets of Cicero with the same freedom as is secured to white persons.

The second count allegedly asserts an action under 42 U.S.C. § 1986 for damages to the next of kin of Jerome Huey. It reasserts the allegations in the first count and, in addition, alleges that the wrongful neglect of the defendants was the direct and proximate cause of the death of Jerome Huey.

### The Question of Jurisdiction

In the federal courts, the plaintiff is entitled to choose the theory upon which he will base his claim. Where the complaint is drawn to seek recovery under the Constitution or laws of the United States, the district court must assume jurisdiction under 28 U.S.C. § 1331 and make a determination on the merits of the claim. The only exceptions to this principle are where the alleged claim appears to be immaterial and solely for the purpose of obtaining jurisdiction or where the claim is wholly insubstantial and frivolous. Bell v. Hood, 327 U.S. 678, 682–683, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Similarly, where a complaint is so drawn as to seek recovery for any wrong specified in 28 U.S.C. § 1343, the district court must assume jurisdiction with the same possible exceptions. Agnew v. City of Compton, 239 F.2d 226, 229 (9th Cir. 1956), cert. denied, 353 U.S. 959, 77 S.Ct. 868, 1 L.Ed.2d 910 (1957). See, also, Montana-Dakota Utilities Co. v. Northwestern Public Services Co., 341 U.S. 246, 249, 71 S.Ct. 692, 95 L.Ed. 912 (1950).

The complaint in the instant case seeks recovery for an alleged conspiracy to deprive plaintiff of his constitutional rights under the Civil Rights Act, 42 U.S.C. § 1985. This is enough to satisfy the jurisdiction requisites for the purposes of both 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The federal claim is not immaterial, but the sole basis of the action.

### The Requisites of an Action Under 42 U.S.C. § 1985(3)

■ The first count of plaintiff's complaint is predicated upon 42 U.S.C. § 1985(3). The elements necessary for a cause of action under this section are (1) a conspiracy by the defendants, (2) with a purpose of depriving the plaintiff of equal protection of the laws or equal privileges and immunities under the law, (3) a purposeful intent to discriminate, (4) action by the defendants under color of state law or authority, and (5) injury to the person or property of the plaintiff or his deprivation of a right or privilege as a citizen of the United States resulting from actions in furtherance of the conspiracy. Hoffman v. Halden, 268 F.2d 280, 292 (9th Cir. 1959). Accord, Colon v. Grieco, 226

F.Supp. 414, 418 (N.J.1964); Rhodes v. Houston, 202 F.Supp. 624, 637 (Neb.) aff'd 309 F.2d 959 (8th Cir. 1962), cert. denied, 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719 (1963). The defendants contend that the complaint fails to allege these requisites.

*Under Color of State Law or Authority*

■ The defendants contend that the wrongs committed against Jerome Huey were not committed under color of state law or authority and, therefore, the complaint will not sustain an action under the Civil Rights Act. Although 42 U.S.C. § 1985(3) does not expressly require that the conspiracy be carried out under color of state law, it appears that the Supreme Court in Collins v. Hardyman, 341 U.S. 651, 661-663, 71 S.Ct. 937, 95 L.Ed. 1253 (1951), has restricted the applicability of this section to situations where the alleged deprivation is pursuant to "state action." See, also, State of Arkansas for Use and Benefit of Temple v. Central Surety & Insurance Corp., 102 F.Supp. 444, 447 (W.D.Ark. 1952).

■ This limitation is traceable to the Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883), in which the public accommodations sections of the Civil Rights Act of 1875 were questioned. In holding these provisions unconstitutional the Supreme Court announced that the Fourteenth Amendment was only directed at "State action of a particular character." It declared that individual invasions of individual rights were not the subject matter of the amendment, and that "civil rights, such as are guaranteed by the constitution against state aggression, cannot be impaired by the wrongful acts of individuals unsupported by State authority in the shape of laws, customs, or judicial or executive proceedings." Id. at 17, 3 S.Ct. at 25. This distinction between purely private discrimination and discrimination pursuant to "state action" has persisted for over eighty years. Only discrimination which falls within the latter category warrants Fourteenth Amendment protection and falls within the ambit of the Civil Rights Act. See Peterson v. City of Greenville, 373 U.S. 244, 247-250, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963); Lewis, The Sit-In Cases: Great Expectations, 1963 Sup.Ct.Rev. 101, 104-107 (1963). Thus, as the defendants contend, the complaint must be dismissed unless it discloses that the alleged deprivation can be linked to the state.

The gist of the defendants' argument is that the state was not involved in the alleged discrimination. They assert that the acts resulting in Jerome Huey's death and the deprivations of his rights were committed by individuals who were acting independently and without any connection to the defendants. They urge that the suit involves nothing more than discrimination by private citizens.

■ Taken as a whole, however, the complaint alleges that the defendants, with knowledge of the possibility of racial disorders, conspired to deprive negroes, as a class, of equal protection of the laws by neglecting to provide for their personal safety. The gravamen of the complaint, therefore, is the failure of the defendants to take reasonable measures to prevent forceful discrimination by individuals. Viewed in this context, this suit involves something more than individual discrimination; it also poses the serious question of whether the state and its officers have an affirmative duty to prevent forceful discrimination.

Discrimination basically involves a conflict between the individual interests of liberty and equality—freedom to discriminate versus freedom from discrimination. Peterson v. City of Greenville, 373 U.S. 244, 250, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963). Liberty, in this sense, means the freedom of the individual to govern his own personal relations. Equality involves the principle that each individual ought to be able to enjoy the same rights and the same measure of dignity as other members of society. The Fourteenth Amendment does not attempt to prohibit individual discrimina-

tion, but only action by the states which is discriminatory. This limitation implicitly involves considerations of the principle of federalism, state versus federal regulation of private conduct. Generally, the state is permitted to remain neutral by choosing to leave this conflict unregulated, allowing individuals to discriminate as individuals. See Peterson v. City of Greenville, supra at 250, 83 S.Ct. 1119. See Lewis, The Sit-In Cases: Great Expectations, 1963 Supt. Ct.Rev. 101, 119–140 (1963); Williams, Mulkey v. Reitman and State Action, 14 U.C.L.A.L.Rev. 26 (1966); Note, 1966 Wis.L.Rev. 831 (1966). However, where individuals attempt to vindicate their personal values by means of force, the conflict transcends the mere interests of the individuals. It also involves the basic interests of society in peace and order.

■ State governments have a basic responsibility to maintain an orderly society. To discharge this responsibility, state and local officials must take reasonable steps to preserve law and order and to provide for the personal safety of individual members of society. The Fourteenth Amendment requires that state officials exercise this duty towards all classes of persons without distinction. Thus, where individuals attempt to use intimidation and violence against others as part of a system of discrimination, state officials have a duty to take reasonable measures to protect the oppressed. They may not be allowed to escape this duty simply by asserting that it is merely a matter of individual discrimination. The neglect of this duty with knowledge of the use of force by one class of persons against another, is tantamount to discrimination by state officials themselves. Such neglect, therefore, would be "state action" of a fundamental nature and within the ambit of the Civil Rights Act.

The legislative history of the Civil Rights Act reinforces this conclusion. The Civil Rights Act was originally enacted following the Civil War in 1871. It was designed to curb the activities of the Ku Klux Klan and to give citizens a form of redress for violations of their rights guaranteed by the Fourteenth Amendment. It was enacted against a background of whippings, robbery, and murder in which local police were at least tacitly involved. The Congressional debates over the bill clearly disclose that Congress was concerned with the inaction of state and local governments and that Congress sought to enact a bill of broad scope to cope, among others, with the problem of the non-administration of law. See Shapo, Constitutional Tort: Monroe v. Pape And the Frontiers Beyond, 60 N.W.L.Rev. 277, 279–282 (1966).

■ In the instant case, the defendants were under a statutory duty to act as conservators of the peace. See Ill. Ann.Stat. Ch. 24, § 3–9–4 (Smith-Hurd, 1962). It is alleged that they knew that negroes were often employed or sought employment in the community and that they had notice that the presence of negroes presented a critical racial situation. While the defendants were not required to insure equality of treatment to negroes by individuals in the community, they were required, as conservators of the peace, to take reasonable measures as dictated by circumstances to prevent the consummation of unlawful acts against negroes. It is alleged that they wilfully failed to act. If this is true, their inaction constituted state action, invidious conduct by the local officials, themselves.

### Purposeful Intent to Discriminate

The defendants assert that the complaint fails to allege that the defendants conspired with the purposeful intent of discriminating between persons or classes of persons. Responding to this assertion, plaintiff contends that it is not necessary to allege intentional or purposeful discrimination. Plaintiff points to the decision of the Supreme Court in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) to support this contention.

■ While it is true that Monroe v. Pape eliminated the necessity of alleging and proving that the defendant acted with a specific mental intent, that decision seems inapplicable to the conspiracy sections of the Civil Rights Act. See Hornsby v. Allen, 326 F.2d 605, 611 (5th Cir. 1964). Monroe v. Pape involved a suit under section 1983 of the Civil Rights Act, rather than a suit under the conspiracy section of the Act, 42 U.S.C. § 1985. The statutory language of section 1985 differs from that of section 1983; it specifically requires that the "purpose" of the conspiracy be to deprive persons or classes of persons of equal protection of the laws or equal privileges and immunities under the Constitution. It seems clear, therefore, that it is necessary to allege a purposeful intent to discriminate in order to assert an action for civil conspiracy under section 1985. See Bargainer v. Michal, 233 F.Supp. 270, 274 (N.D.Ohio, 1964); State of Arkansas v. Central Surety & Insurance Corp., 102 F.Supp. 444, 447 (W.D.Ark.1952).

■ The complaint alleges that the defendants acted in concert, that they "wilfully" acted or omitted to act, that the defendants could have secured the plaintiff's intestate equal protection of the laws and equal privileges and immunities of the laws that are secured to white persons in the community, and that they failed to do so. While these allegations are conclusory and somewhat imprecise, they imply an intentional discriminatory enforcement or non-enforcement of the laws by the defendants. Certainly, an intent to discriminate might be inferred from a wilful neglect of their duties.

*The Necessity of Overt Acts*

■ The defendants also attack the sufficiency of the complaint on the ground that plaintiff has failed to allege any overt acts related to the promotion of the claimed conspiracy. It is true that a cause of action for civil conspiracy is incomplete without overt action by a conspirator. See, e. g., Collins v. Hardyman, 341 U.S. 651, 659, 71 S.Ct. 937, 95 L.Ed. 1253 (1951); Powell v. Workman's Compensation Bd., 327 F.2d 131, 137 (2nd Cir. 1964); Hoffman v. Halden, 268 F.2d 280, 295–298 (9th Cir. 1959). This is because the function of a civil conspiracy action is compensatory. The plaintiff must have suffered some actual injury or loss resulting from the consummation of the conspiracy in order for a cause of action to exist. The purpose of alleging overt acts, therefore, is to show that the defendant carried the conspiracy into effect and that their actions were the cause of the plaintiff's injury. Hoffman v. Halden, 268 F.2d 280, 295–296 (9th Cir. 1959).

The instant complaint, however, defies orthodox analysis. The essence of the plaintiff's claim is that the defendants' inaction pursuant to a conspiracy resulted in a deprivation of equal protection. Instead of examining the complaint solely for affirmative acts, we must also examine it for an instance in which the defendants were under a duty to act and failed to do so.

■ As previously indicated, the complaint is conclusory and imprecise. It contains only general allegations that the defendants could have prevented the injury of Jerome Huey by the exercise of reasonable diligence and that they failed to do so. Although pleadings are given a liberal construction in the federal courts, the Rules contemplate some factual statement in support of the claim. General allegations of this kind unsupported by any factual statements have usually been rejected as insufficient. See, e. g., Powell v. Workman's Compensation Board, 327 F.2d 131, 137 (2nd Cir. 1964); Hoffman v. Halden, 268 F.2d 280, 295 (9th Cir. 1959); Rogers v. Provident Hospital, 241 F.Supp. 633, 637 (N.D.Ill.1965); Rhodes v. Houston, 202 F.Supp. 624, 629, 637–638 aff'd 309 F.2d 959 (8th Cir. 1962), cert. denied, 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719 (1963).

■ The plaintiff has not alleged any specific act or omission by the defendants proximately related to the at-

tack on Jerome Huey. Public officials are not the guarantors of the safety of all persons present in the community. If they were, every victim of a crime would have a cause of action against them. Some specific act or omission in dereliction of their public responsibility which proximately caused the injury must be alleged. Absent such an allegation, the plaintiff's cause of action under section 1985 cannot be sustained.

*Cause of Action Under 42 U.S.C. § 1983*

Although the first count is insufficient to allege an action for civil conspiracy under 42 U.S.C. § 1985(3), it would appear proper to examine the complaint in order to determine if it alleges sufficient grounds for relief under 42 U.S.C. § 1983.

 Under the Federal Rules of Civil Procedure, a complaint need only give the defendant fair notice of the claim and the grounds upon which it rests. Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint is not to be dismissed simply because the plaintiff fails to assert the proper legal theory. Rather the court is under a duty to examine the complaint to determine if there are grounds for relief on any possible theory. See, e. g., Nord v. McIlroy, 296 F.2d 12, 14 (9th Cir. 1961); Dotschay for Use and Benefit of Alfonso v. National Mut. Ins. Co., 246 F.2d 221, 223 (5th Cir. 1957); Dioguardi v. Durning, 139 F.2d 774 (2d Cir. 1944). See, also, 2A Moore, Federal Practice ¶ 8.14 (2nd ed. 1967). Therefore, even though the complaint frames the action in terms of civil conspiracy, we must examine other possible theories of recovery.

 Section 1983 of Title 42, United States Code, provides a civil remedy for the deprivation of constitutional rights under color of state law. In Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court interpreted this statute to provide a broad federal right, stating,

> [T]he legislation was passed to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyments of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies. Id. at 180, 81 S.Ct. at 480.

The Court specifically held that it was unnecessary to allege that the defendant acted with the specific purpose and intent of depriving one of a federal civil right, stating that the statute "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." Id. at 187, 81 S.Ct. at 484. It is clear, therefore, that section 1983 has been interpreted to provide a new type of tort: the invasion, under color of law, of a citizen's constitutional rights. It is also clear that it is not necessary that this invasion be intentional; it may merely be negligent. See Bowens v. Knazze, 237 F.Supp. 826, 828 (N.D.Ill. 1965). See, also, Shapo, Constitutional Tort: Monroe v. Pape, and the Frontiers Beyond, 60 N.W.L.Rev. 277 (1966).

Negligent liability generally arises in the context of affirmative action. The defendant is deemed culpable where he has acted and his acts do not conform to the standard of a reasonably prudent man as judged against the community ideal of reasonable behavior. See Prosser, Torts §§ 53, 54 (3d ed.1964). The defendant is not usually held to be responsible for inaction. However, where the defendant is under some affirmative duty to act and he fails to act accordingly, he may be held negligently responsible for his omission. He is responsible if his omission is unreasonable in light of the circumstances. See Prosser, Torts, § 54 (3d ed.1964).

 City officials and police officers are under an affirmative duty to preserve law and order, and to protect the personal safety of persons in the community. This duty applies equally to negroes, as well as to white persons. If such officials have notice of the pos-

sibility of racial disorder and the possibility of attacks upon negroes or other persons, they are under an affirmative duty to take reasonable measures to protect the personal safety of such persons in the community. Their failure to perform this duty would constitute both a negligent omission and a denial of equal protection of the laws. Accordingly, an unreasonable omission of this nature would be actionable under section 1983.

The instant complaint poses the possibility of such a negligent omission. Yet, the complaint is framed in terms of conspiracy. And, on two occasions the Court of Appeals for the Seventh Circuit has found that an action for civil conspiracy cannot be maintained under section 1983. Jennings v. Nester, 217 F.2d 153 (7th Cir. 1955); Eaton v. Bibb, 217 F.2d 446 (7th Cir. 1954). Both cases involved assertions of a deprivation of due process resulting from a conspiracy. In Jennings v. Nester, the Court stated, "Section 1983 does not mention conspiracy, while section 1985 does. Therefore, the Act creates a cause of action for a conspiracy to deny equal protection, but not for a conspiracy to deny due process." 217 F.2d at 154. The Court reiterated this reasoning in Eaton v. Bibb. See 217 F.2d at 449.

■■■ It should be noted, however, that these cases were decided before section 1983 was given a broad construction in Monroe v. Pape, supra. While these cases stand for the proposition that section 1983 may not support an action for conspiracy, the proposition remains that the acts of individual conspirators resulting in the consummation of an alleged conspiracy, can give rise to individual liability under this section. Moreover, section 1983 has been interpreted to support actions against individuals for a denial of equal protection of the laws. See, e. g., Lee v. Hodges, 321 F.2d 480, 486 (4th Cir. 1963); Moss v. Hornig, 314 F.2d 89, 92 (2nd Cir. 1963); Adams v. City of Park Ridge, 293 F.2d 585, 589–590 (7th Cir. 1961). Logically, this individual liability can be carried a step further and applied to the situation where two or more persons act jointly or in concert so as to deprive a person of equal protection of the laws. Such persons can properly be regarded as joint tortfeasors. Hoffman v. Halden, 268 F.2d 280, 292–293 (9th Cir. 1959). Since a federal court is required to take cognizance of any possible theory of recovery, it is possible, therefore, that the defendants may be liable as joint tortfeasors in the instant action.

■■■ For the reasons previously stated, however, plaintiff has also not alleged facts sufficient to support an action under section 1983. The complaint simply states that the defendants had notice of the daily presence of negroes in Cicero and the possibility of racial disorder. It further alleges that the defendants neglected to prevent or to aid in preventing the attack on Jerome Huey. These allegations are merely conclusory. The complaint does not allege any specific acts or omissions by defendants, any causal connection between such acts or omissions and the deprivations suffered by Huey, or that the alleged acts or omissions were unreasonable in light of the circumstances. Without such minimum factual allegations the complaint cannot be sustained.

### Immunity

The defendants also raise the question of their immunity from tort liability under the Civil Rights Act. Public employees in Illinois are not liable for failure to provide adequate police protection and for failure to prevent the commission of crimes. Ill.Ann.Stat. ch. 85, § 4–102 (Smith-Hurd), 1966. The defendants contend that the cause instituted against them cannot be maintained in contravention of this statutory immunity.

■■■ An act of Congress supersedes any state statute or common law doctrine with which it is in conflict and the language of the Civil Rights Act is so broad as to suggest that it was intended to usurp all state common law and statutory immunities. Nevertheless, the federal courts have recognized the immunity of certain state officials. For

instance, it has been held that state legislative and judicial officials are immune from suit under the Civil Rights Act. See Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); Bauers v. Heisel, 361 F.2d 581 (3d Cir. 1966), cert. denied, 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457 (1967); Stift v. Lynch, 267 F.2d 237 (7th Cir. 1959); Kenny v. Fox, 232 F.2d 288 (6th Cir.), cert. denied, 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956). See, also, Note, 68 Harv.L. Rev. 1229 (1959). Certainly, these instances in which official immunity has been held to apply under the Act do not support the recognition of an immunity of the nature which defendants here seek. See Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Comment, 1967 Duke L.Rev. 741, 772–776, 797–805 (1967).

Moreover, the conclusion that public officials are always immune from suit for failure to provide adequate police protection would be totally inconsistent with the language and purpose of the Civil Rights Act. The legislative history of the Act discloses that it was directed at the maladministration, neglect, and disregard of laws by state and local officials. The purpose of the Act was to provide a federal remedy for the deprivation of federally guaranteed rights. To hold that public employees enjoy an immunity under the Civil Rights Act similar to that which they may enjoy under state law would largely frustrate that purpose. Cf. Jobson v. Henne, 355 F.2d 129, 135 (2d Cir. 1966). We conclude, therefore, that the defendants are not necessarily immune from suit under the Civil Rights Act.

### The Statute of Limitations

The defendants contend that the second count, seeking recovery under 42 U.S.C. § 1986, should be dismissed because the suit was not commenced within a year of the incident which resulted in Jerome Huey's death. Section 1986 provides a cause of action for the benefit of the next of kin of any person killed or injured as a result of a civil conspiracy mentioned in section 1985 of the Civil Rights Act. Such an action may be brought against any person having knowledge of the conspiracy who neglects to prevent or aid in the prevention of the wrong conspired to be done. Section 1986 specifically provides, however, that such a suit must be brought within one year after the accrual of the cause of action.

Jerome Huey was beaten on May 25, 1966. He died four days later on May 29, 1966. This complaint was filed on May 29, 1967. Whether the second count is barred turns, therefore, on the question of whether the one year period commenced on the date of the assault or on the date of death.

The defendants contend that the case of Hoffman v. Halden, 268 F.2d 280 (9th Cir. 1959) should control. In the *Hoffman* case the court adopted the rule, frequently applied in anti-trust cases, that an action for civil conspiracy accrues on the date of the overt act alleged to have caused damage. The defendants assert that this is the date of the assault.

Although the *Hoffman* case involved a civil conspiracy action under the Civil Rights Act, it is distinguishable from the instant action on two grounds. First, it did not involve a death action. Second, the Court did not specifically consider the applicability of the one year limitation contained in section 1986. Moreover, in Monroe v. Pape the Supreme Court indicated that the Civil Rights Act should be construed in accordance with the general principles of tort liability. See 365 U.S. at 187, 81 S.Ct. 473. It would seem, therefore, that the *Hoffman* case is unpersuasive, and that it is more appropriate to give section 1986 a construction consistent with that usually given wrongful death acts rather than a construction similar to that given the anti-trust acts.

A majority of courts have held that a death action accrues on the date of death and that the statute of limitations runs only from that date. See, e. g., Frankel v. Styer, 209 F.Supp. 509

(E.D.Penn.1962); De Hart v. Ohio Fuel Gas Co., 84 Ohio App. 62, 85 N.E.2d 586 (1948); Bruns v. Welte, 126 Ill.App. 541 (4th Dist.1905). See, also, Prosser, Torts § 121 (3d ed.1964). Applying this rule to the instant suit the date of Huey's death would be the date on which the one year limitation commenced to run. Hence this suit was filed within one year of the accrual of the cause of action.

Nevertheless, the second count must also be dismissed. Section 1986 is derivative in nature. It provides a remedy only for injuries resulting from a conspiracy mentioned in section 1985 of the Civil Rights Act. Since the plaintiff has not alleged facts sufficient to establish an action under section 1985, it follows that a derivative action under section 1986, premised on the same insufficient conclusory allegations, cannot be sustained.

For the foregoing reasons, the plaintiff's complaint is insufficient to state a claim under the Civil Rights Act, 42 U.S.C. §§ 1983, 1985, 1986.

An appropriate order will be entered.