Richard **WALLACH**, Appellant,

v.

Norman **CANNON**, Oklahoma Tax Commission, et al., Appellees.

No. 17636.

United States Court of Appeals
Eighth Circuit.

March 11, 1966.

John J. Cole, of Heneghan, Roberts & Cole, St. Louis, Mo., filed motion to dis-

miss appeal on behalf of appellees Leslie Conner, Herman Merson and A. D. Howell.

Robert J. Koster, Asst. U. S. Atty., St. Louis, Mo., filed motion to dismiss appeal on behalf of appellees U. S. Dept. Office of Dallas, Tex., and/or Labor Dept. Attys., Earl Street, Truett E. Bean, Dallas, Tex., and Harry Campbell, Jr., and the U. S. Internal Revenue Service and/or its Directors in Oklahoma City, Okl., and Earl Wiseman.

Jerome W. Sidel, of Sidel & Sandweiss, St. Louis, Mo., filed motion to dismiss appeal on behalf of appellee Jacob Finke and/or United Investment Co.

Leo F. Laughren, St. Louis, Mo., filed motion to dismiss appeal pro se.

John J. Cole, of Heneghan, Roberts & Cole, St. Louis, Mo., also filed motion to dismiss appeal on behalf of Alma Zell Akers, R. M. Akers and H. J. Vanhook.

William G. Guerri, St. Louis, Mo., filed motion to dismiss appeal on behalf of appellee Mercantile Trust Co.

Richard Wallach, St. Louis, Mo., filed motions in answer to appellees.

Before JOHNSEN and MATTHES, Circuit Judges.

PER CURIAM.

The appeal is dismissed for want of a substantial question as basis for a regular review.

The order appealed from is one making dismissal of appellant's complaint as to each of appellees severally and resultingly of the complaint in its whole. Our disposition is for the reason that in such claim as the complaint could be regarded as stating the District Court for the Eastern District of Missouri was without jurisdiction to deal with the merits against any of appellees.

Appellees are some 27 in number.[1] Most of them are citizens of the State of Oklahoma, upon whom service of summons had been made beyond the territorial limits of effective service un-

1. Approximately 40 names were set out in the caption of the complaint as defendants, but a third of these consisted of repetitions.

der Rule 4(f), Fed.Rules Civ.Proced., 28 U.S.C.A. Two of appellees are the U. S. Department of Labor and the U. S. Internal Revenue Service, upon which the service of process attempted had not been in accordance with the requirements of Rule 4(d) (5).[2] Two others consist of the State of Oklahoma and the Oklahoma Tax Commission, a govermental agency of the State, which under the Eleventh Amendment are not subject to suit in the federal district courts on a claim such as that asserted, and as to which the service of summons engaged in under Rule 4(d) (6) was therefore incapable of effecting jurisdiction over them.[3] The rest of appellees, 5 in number, are citizens of the State of Missouri, the same as appellant.

Without need to go further here than the element of capturing process, the want of jurisdiction over the governmental appellees referred to, both federal and state, is plain and no additional comment is called for. As to all of the other appellees, both the Oklahoma citizens and the Missouri citizens, the capturing process involved equally would be unable to provide the court with jurisdiction to deal with or grant relief against them, unless the claim was of a nature as to which there existed jurisdictional basis other than diversity, and which had provision for service of process comprehending that here engaged in —which question will be later considered.

Appellant, in layman's reading and interpretation, had made denomination and predication of the complaint as an "interpleader civil action and constitutional case and controversy". Specifically, he regarded the interpleader statutes, 28 U.S.C.A. §§ 1335, 1397 and 2361, with their broad venue and process provisions, as affording him means for instituting the suit in the Eastern District of Missouri and effecting processive capture of appellees there on that basis.

But appellant's claim was not one that came within the interpleader statutes or that variantly was capable of constituting a bill in the nature of interpleader. See 30 Am.Jur., Interpleader, § 16. Appellant was seeking to recover damages from all of appellees for conspiracy and collusion to cause him pecuniary injury through fraud in commercial transaction and alleged legal malpractice in the representation of him in relation thereto. Thus there was involved no fund, pecuniary obligation, or other property as to which he was in the position of a stakeholder. § 1335. Obviously, also, within "nature of interpleader", there was no way to view the relationship of appellees and appellant, or of appellees among themselves, as being one of adverse claimants to the benefits of any recovery that might be obtained in the action. And it should hardly need saying that the interpleader provision of Rule 22, Fed.Rules Civ.Proced., 28 U.S.C.A., as to "(p)ersons having claims against the plaintiff * * * when these claims are such that the plaintiff is or may be exposed to double or multiple liability", was utterly without any application to the situation. Hence appellant's attempted predication on interpleader or nature of interpleader afforded no possible basis for the issuance of process made and a saving of his complaint from dismissal in relation thereto.

Nor does appellant's added labeling of the complaint as "a constitutional case and controversy" afford basis for saving it from dismissal on the inability of the court to engage in any action against appellees in the situation. Fundamentally, what appellant was making reach at was recovery for the investment which he had lost, the liability to which he had been exposed, and the injury to

---

2. As to the mandatoriness of the requirements of par. (5) and (4) of Rule 4(d) for obtaining service of process on the United States, on an officer, or on a suable agency thereof, see Messenger v. United States, 231 F.2d 328 (2 Cir. 1956).

3. The service of summons made upon these appellees had also been beyond the territorial limits of effective service under Rule 4(f).

reputation and business which he had allegedly sustained from having bought his way into and having become involved in the affairs of an insolvent Oklahoma corporation which was shortly thereafter thrown into involuntary bankruptcy.[4] Liability was asserted against appellees as having been collusively responsible for the incidents and consequences which had thus occurred to him.

Appellant characterized the course of his involvement and attempted extrication as a matter of being "swindled". He claimed to have put up $45,000 for the purchase of stock at par value in Central Iron & Metal Co., Inc., the Oklahoma corporation. An audit was to be made of the corporation's condition. When the audit showed an insolvency of approximately $200,000, he was improperly induced, he says, to agreeing to a non-judicial reorganization, under which he was to become owner of all the capital stock by payment to the previous stockholders of fifteen cents on the dollar of original par value.

According to the complaint, a loan of $183,000 was to be arranged for by the previous officers as working capital for the reorganized corporation, with a promissory note being drawn, in which appellant joined as maker or guarantor, and with a chattel mortgage being executed on the assets of the corporation, for the effectuation of this purpose. He alleges that this $183,000 of represented working capital was never provided by the previous officers, but that instead the former president used the chattel mortgage and the property covered thereby for his own purposes and benefit. It is further asserted that the former president had also agreed to provide the reorganized corporation with a "letter of credit", in a face amount of $250,000, covering a five-year period, for use in purchasing government surplus and salvage materials, and that such letter of credit was never furnished. Instead, according to appellant, approximately six months after the reorganization, the previous officers as claimed creditors designedly threw the reorganized corporation into involuntary bankruptcy. The business was resultingly liquidated, with appellant being required to make further payments and being compelled to sign releases in the bankruptcy proceedings in extricating himself from the financial web in which he had become involved.

■ If there was improper inducement or deception involved in appellant's buying his way into the insolvent corporation, assuming obligations, putting up money, and ultimately having to make releases in relation thereto, so as tortiously to have caused him to suffer loss, he would of course, conventionally have a claim for fraud against all or any of those who had thus wrongfully gotten him to so act. But neither such wrong nor the remedy therefor would ordinarily represent a "constitutional case and controversy". Appellant has, however, throughout his complaint, [in layman's sanctuarial phrase of the day as to almost all legal grievances] characterized what occurred to him and the handling thereof by the attorneys he employed to represent him as a deprivation of due process and a denial of equal protection.

Although the complaint does not specifically attempt to correlate this characterization to the provisions of 42 U.S. C.A. §§ 1983 and 1985(3) [civil rights damages], but instead, as previously noted, undertakes to predicate jurisdiction federally on interpleader, we shall in liberal attitude toward appellant's lay efforts extend our discussion to §§ 1985

---

4. In the complaint appellant named himself (Richard Wallach) and a Missouri corporation (Richard Wallach Metals & Supply Co.) as plaintiffs and sought recovery for them jointly. In the notice of appeal he has named himself alone as appellant. The complaint does not make clear how appellant and the corporation had a joint recovery interest, but from the name of the corporation and the dropping of it as appellant, the corporation presumably was a mere shell and personal vehicle, so that appellant has chosen to treat himself here as the real and only party in interest.

(3) and 1983 in any relationship which these sections could have to our holding that the process involved was not capable of effecting capture of any of appellees, enabling the court to grant relief against them.

Section 1985(3), insofar as here pertinent, provides that "If two or more persons in any State or Territory conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws * * * the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators". Section 1983 provides that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress".

It should first be noted that, if the complaint could be regarded as stating any claim under either or both of these sections, this would not enable the suit to be saved from dismissal as to any of the Oklahoma appellees on the process involved against them. The territorial limits of effective service under Rule 4(f), as referred to above, are applicable to actions under §§ 1983 and 1985, since there is neither Federal nor Missouri provision which enables a further reach than this

to be made in such cases for obtaining jurisdiction over the person.

Hence as to whatever claim, if any, might have been stated under §§ 1983 and 1985(3), the question of validity of capturing process need remainingly be considered only as to the five Missouri appellees—four attorneys [5] and the representative of a St. Louis financial or investment house.[6] On their face, however, the grievances set out in the complaint could not constitute an actionable right under §§ 1983 or 1985(3) so as to afford basis for federal processive capture of these appellees.

■ The right of action against another granted by § 1983 for deprivation of due process and that granted by § 1985(3) for conspiracy to deprive of equal protection are limited in their scope to situations where the things done have had at least some attribute of state authorization or warrant for having been engaged in. Section 1983 expressly provides that the deprivation must be one which is occasioned "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory". Similarly, although § 1985(3) does not contain this express language, it has been held that it too "can only be applied to injuries to civil rights by persons acting pursuant to or under color of state law". Collins v. Hardyman, 341 U.S. 651, 656, 71 S.Ct. 937, 939, 95 L.Ed. 1253 (1951). "Such private discrimination is not inequality before the law unless there is some manipulation of the law [of a state] or its agencies to give sanction or sanctuary for doing so". Id., 341 U.S. at

---

**5.** Two of these attorneys had represented appellant in the reorganization events and in the bankruptcy proceedings. The other two had represented him in subsequent unsuccessful attempts to have the bankruptcy proceedings reopened and in the bringing of suit against the previous officers of the Oklahoma corporation.

**6.** On the facts set out by appellant as to the financial representative, there would seem to be no basis for charging him with conspiracy. He was shown to have held

some funds involved in the bankruptcy proceedings; to have attended a conference in St. Louis between appellant and appellant's attorneys looking toward a disposition of these funds; and to have paid out the funds on the basis of the disposition to which appellant purported to agree and as to which he executed papers of authorization. In view of the disposition made of the whole situation, however, it is unnecessary to deal with this aspect as a lack of basis for the process issued against him.

661, 71 S.Ct. at 942. See also Love v. Chandler, 124 F.2d 785 (8 Cir. 1942).

In the reference which the deprivation of equal protection, as used in § 1985(3), thus has to the scope of the guarantee contained in the Fourteenth Amendment, there is applicable to it also the recent expression of the Supreme Court in Peterson v. City of Greeneville, 373 U.S. 244, 247, 83 S.Ct. 1119, 1121, 10 L.Ed.2d 323 (1963), as follows: "It cannot be disputed that under our decisions 'private conduct abriding individual rights does no violence to the Equal Protection Clause unless to some significant extent the State in any of its manifestations has been found to have become involved in it' ".

■ If the grievances alleged by appellant were committed, they had no incidence of state authorization, warrant, sanction or sanctuary on the part of either Oklahoma or Missouri for being done. Whatever fraud may have been perpetrated upon appellant was purely private and was without any touch of state law, state instrumentalities, or state manifestations of sanction or sanctuary in relation to its being done. The same is true of any misrepresentation, misconduct or malpractice which may have occurred on the part of appellant's attorneys. Thus, except as diversity of citizenship exists as to appellees, and except as capturing process is able to be obtained against them on this basis, appellant's action is not capable of being maintained in the federal courts. Here, on this basis, the court had no jurisdiction to take action against any of appellees on the service of process involved.

On the basis on which our disposition is being made, the trial court's dismissal shall stand as one without prejudice in respect to all of appellees.

Appeal dismissed.