Eugene **GRIFFIN**, a minor by his next
friend and father, Roosevelt Griffin,
et al., Appellants,

v.

Lavon **BRECKENRIDGE** et al.,
Appellees.

**No. 25799.**

United States Court of Appeals
Fifth Circuit.
April 29, 1969.

Martha M. Wood, Jackson, Miss., for
appellants.

Helen J. McDade, DeKalb, Miss., Wil-
burn D. Moore, Sr., Philadelphia, Miss.,
for appellees.

Before GOLDBERG and AINS-
WORTH, Circuit Judges, and SPEARS,
District Judge.

GOLDBERG, Circuit Judge:

This civil rights case, ruled by the ma-
jority opinion in Collins v. Hardyman,[1]
involves a racially motivated assault
committed upon a public highway. Ad-
hering as we must to *Collins*, we affirm
the district court's dismissal of appel-
lants' complaint.

Plaintiffs, Negro citizens, brought this
suit under the mantle of 42 U.S.C.A. §
1985(3),[2] popularly known as the Ku

1. 341 U.S. 651, 71 S.Ct. 937, 9 L.Ed. 1253
(1951).

2. 42 U.S.C.A. § 1985:

\* \* \* \* \*

(3) If two or more persons in any
State or Territory conspire or go in dis-
guise on the highway or on the premises
of another, for the purpose of depriving,
either directly or indirectly, any person
or class of persons of the equal protection
of the laws, or of equal privileges and
immunities under the laws; or for the
purpose of preventing or hindering the
constituted authorities of any State or
Territory from giving or securing to all
persons within such State or Territory
the equal protection of the laws; or if
two or more persons conspire to prevent
by force, intimidation, or threat, any
citizen who is lawfully entitled to vote,

from giving his support or advocacy in
a legal manner, toward or in favor of the
election of any lawfully qualified person
as an elector for President or Vice Presi-
dent, or as a Member of Congress of the
United States; or to injure any citizen
in person or property on account of such
support or advocacy; in any case of con-
spiracy set forth in this section, if one or
more persons engaged therein do, or cause
to be done, any act in furtherance of the
object of such conspiracy, whereby
another is injured in his person or prop-
erty, or deprived of having and exercising
any right or privilege of a citizen of the
United States, the party so injured or de-
prived may have an action for the recov-
ery of damages, occasioned by such in-
jury or deprivation, against any one or
more of the conspirators. R.S. § 1980.

Klux Klan Act. They alleged in their complaint a conspiracy between defendants Lavon Breckenridge and James Breckenridge to deprive them of their equal protection of the laws and their privileges and immunities under the laws. Specifically they charged that on July 2, 1966, defendants, both white adults, acting under the mistaken belief that R. G. Grady was a worker for the civil rights of Negroes, willfully and maliciously conspired, planned and agreed to block the passage of plaintiffs upon the public highway and to assault, beat and injure them with deadly weapons. It was further alleged that pursuant to this conspiracy defendants drove their truck into the path of Grady's automobile and blocked its passage over the public road. Both defendants then forced Grady and the other plaintiffs from their automobile and, holding them at gun point, began to club Grady with a black jack, pipe or other blunt instrument. During this period defendants repeatedly menaced plaintiffs with threats to kill or injure them, and eventually attacked all plaintiffs with clubs, while preventing escape or resistance with their firearms.

Based on these allegations, plaintiffs seek $10,000 compensatory and $5,000 punitive damages. They claim that as a result of defendants' conspiracy and their acts pursuant thereto, plaintiffs have been deprived of their rights, privileges and immunities as citizens of the United States and as citizens of the State of Mississippi, including but not limited to their rights of freedom of speech, movement, association and assembly; their right to petition their government for redress of grievances; their right to be secure in their persons; their right not to be enslaved nor deprived of life, liberty or property other than by due process of law; and finally, their right to travel the public highways without restraint on the same terms as white citizens in Kemper County, Mississippi. The district court dismissed plaintiffs' complaint on the authority of Collins v. Hardyman, *supra*, for failure to state a cause of action. The district judge reasoned that the complaint alleged no more than an invasion of private rights by private individuals, and that *Collins* and numerous lower courts had limited § 1985(3) to actions performed under "color of law." See Hoffman v. Halden, 9 Cir. 1959, 268 F.2d 280, 291; Wallach v. Cannon, 8 Cir. 1966, 357 F.2d 557; Haldane v. Chagnon, 9 Cir. 1965, 345 F.2d 601; Bryant v. Donnell, W.D. Tenn.1965, 239 F.Supp. 681; Van Daele v. Vinci, N.D.Ill.1968, 294 F.Supp. 71; Huey v. Barloga, N.D.Ill. 1967, 277 F.Supp. 864; Swift v. Fourth National Bank of Columbus, Georgia, M.D.Ga. 1962, 205 F.Supp. 563.

On this appeal, plaintiffs forcefully urge that United States v. Guest,[3] and Jones v. Alfred H. Mayer Co.,[4] have lifted the state action limitation from § 1985 (3) so that the literal words of that statute[5] (which do not include the words "under color of law") may now be given their unfettered application.

The state action limitation on the various Civil Rights Acts[6] enacted during the Reconstruction Era are traceable to the Civil Rights Cases, 1883, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835, in which the public accommodation sections of the Civil Rights Act of 1875 were questioned. Out of those cases, and of course out of the language of the Fourteenth Amendment itself,[7] has grown a long and com-

3. 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966).

4. 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

5. See footnote 2.

6. Civil Rights Act of 1866, 14 Stat. 27 (1866), now, Rev.Stat. § 1978, 42 U.S. C.A. § 1982 (1964); the Enforcement Act, 16 Stat. 140 (1870); the amendments to the Enforcement Act, 16 Stat. 433 (1871); Civil Rights Act of April 20, 1871, 17 Stat. 13 (1871), now, Rev. Stat. § 1980, 42 U.S.C.A. § 1985; Civil Rights Act of March 1, 1875, 18 Stat. 335 (1875).

7. Amendment. XIV. [1868]
   Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens

plicated history in which the state action requirement has undergone considerable expansion [8] and some redefinition, but always with the result that the Fourteenth Amendment and rights flowing from it have been vouchsafed only where there has been interference by state authority, or by those acting under "color" of state authority. United States v. Price, 1966, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267. As said by one court, "[t]his distinction between purely private discrimination and discrimination pursuant to 'state action' has persisted for over eighty years. Only discrimination which falls within the latter category warrants Fourteenth Amendment protection and falls within the ambit of the Civil Rights Act." (Section 1985 (3)). Huey v. Barloga, supra, 277 F. Supp. at 869. In the words of the Supreme Court in United States v. Cruikshank, 1876, 92 U.S. 542, 23 L.Ed. 588:

> "The Fourteenth Amendment prohibits a State from denying to any person within its jurisdiction the equal protection of the laws; but this provision does not add anything to the rights which one citizen has under the Constitution against another. The equality of the rights of citizens is a principle of republicanism.

Every republican government is in duty bound to protect all its citizens in the enjoyment of this principle, if within its power. That duty was originally assumed by the States; and it still remains there. The only obligation resting upon the United States is to see that the States do not deny the right. This the Amendment guaranties [sic], but no more." 92 U.S. at 555.

See also United States v. Guest, 383 U.S. 745, 755, 86 S.Ct. 1170, 16 L.Ed.2d 239 and Wilkins v. United States, 5 Cir. 1967, 376 F.2d 552, 560, cert. denied, 389 U.S. 964, 88 S.Ct. 342, 19 L.Ed.2d 379.

Despite the long history and the persistent durability of the state action limitation, appellants contend that under Section 5 of the Fourteenth Amendment, Congress has the power to punish all conspiracies to violate Fourteenth Amendment rights, with or without state action. They rely for this proposition on United States v. Guest, *supra*.

*Guest* involved a criminal prosecution under 18 U.S.C.A. § 241,[9] and not under 42 U.S.C.A. § 1985(3).[10] A majority of the Court, concurring in the opinion of Mr. Justice Stewart, reaffirmed the Court's position that the equal protec-

of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

\* \* \* \* \*

Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

8. See Note, Fourteenth Amendment Congressional Power to Legislate Against Private Discriminations: The Guest Case, 52 Cornell L.Q. 586, 591–599.

9. 18 U.S.C.A. § 241.

If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws

of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—

They shall be fined not more than $5,000 or imprisoned not more than ten years, or both.

10. 18 U.S.C.A. § 241 and 42 U.S.C.A. § 1985(3) are closely analogous, and one has been called the criminal "counterpart" of the other. Baldwin v. Morgan, 5 Cir. 1958, 251 F.2d 780, 790. However, the *precise* criminal analogue of the first several clauses in § 1985(3) was R.S. § 5519, originally part of Section 2 of the Act of April 20, 1871, 17 Stat. 13, 14. It was declared unconstitutional in United States v. Harris, 1883, 106 U.S. 629, 1 S.Ct. 601, 27 L.Ed. 290. See Hardyman v. Collins, 9 Cir.1950, 183 F.2d 308, 317 (dissenting opinion).

tion clause of the Fourteenth Amendment does not reach wrongs done by one or more private individuals against another. 383 U.S. at 755, 86 S.Ct. 1170. The Court nonetheless concluded that dismissal of the indictments against private persons was improper because there had been some state involvement in the conspiracy.

Appellants point out that six of the Justices in Guest subscribed to the view that Section 5 of the Fourteenth Amendment empowers Congress to enact legislation affecting purely private conduct. They emphasize that the legislative history and the language of § 1985(3) indicate that Congress not only intended to assert its full power under the Constitution when it enacted the Civil Rights Acts,[11] see United States v. Price, 1966, 383 U.S. 787, 800, 86 S.Ct. 1152, 16 L.Ed. 2d 267, 276, 280–287; United States v. Mosley, 238 U.S. 383, 387–388, 35 S.Ct. 904, 59 L.Ed. 1355, 1357; Virginia Commission on Constitutional Government, The Reconstruction Amendments, Debates (1967), pp. 484–570, but also clearly intended that § 1985(3) reach private conspiracies. Cong. Globe, 42nd Cong., 1st Sess., 505–506(1871); Cong. Globe, 42nd Cong., 1st Sess., 481–484.

■ While we do not gainsay the persuasiveness of this argument, and certainly do not disparage the prognosti-

cations of numerous commentators who read in Guest the eventual demise of the state action requirement,[12] we cannot subscribe to the view that Guest has fulfilled this promised potential. This court does not write on a clean slate. We are compelled to note that most if not all courts which have considered Guest since its appearance in 1966 have hewed closly to the majority opinion by Justice Stewart and to the majority's findings of state action. Jones v. Alfred H. Mayer Co., 8 Cir. 1967, 379 F.2d 33, 43, reversed on other grounds; 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189; United States v. Lester, 6 Cir. 1966, 363 F.2d 68, 72, cert. denied, 385 U.S. 1002, 87 S.Ct. 705, 17 L.Ed.2d 542; O'Hara v. Mattix, W.D.Mich.1966, 255 F.Supp. 540, 542; St. Augustine High School v. Louisiana High School Athletic Association, E.D.La.1967, 270 F.Supp. 767, 771–772, aff'd., 5 Cir. 1968, 396 F.2d 224. This court has been no exception. Wilkins v. United States, 5 Cir. 1967, 376 F.2d 552, 570, cert. denied, 389 U.S. 964, 88 S.Ct. 342, 19 L.Ed.2d 379. At this late date we cannot give Guest a new and novel interpretation. \ Guided as we are by decisions of other courts, bound as we are by Wilkins, and recognizing that Guest on its merits does not abolish state action,[13] we are constrained to hold that § 1985(3) does not reach private conspiracies to interfere with Fourteenth

---

11. While *Price* and *Mosley* deal with § 241, and not § 1985(3), all indications in the legislative history of the Ku Klux Klan Act suggest that the two sections are to be viewed synoptically. See Cong.Globe, 42nd Cong. 1st Sess., App. at 69.

12. Frantz, Federal Power to Protect Civil Rights: The Price and Guest Cases, 4 L. in Trans.Q. 63, 69–73 (1967); Note, Fourteenth Amendment Congressional Power To Legislate Against Private Discriminations: The Guest Case, 52 Cornell L.Q. 586, 599 (1967); Avins, The Civil Rights Act of 1875 and The Civil Rights Cases Revisited: State Action, The Fourteenth Amendment and Housing, 14 U.C.L.A.L.Rev. 5 (1966); Note, Congressional Power Under Section 5 of the Fourteenth Amendment May Extend to Punishment of Private Con-

spiracies to Interfere With The Equal Enforcement of State-Owned Public Facilities, 45 Tex.L.Rev. 168 (1966); Note, Civil Rights-Federal Criminal Code Protects Rights Secured by Fourteenth Amendments, 20 Vand.L.Rev. 170 (1966); Silard, A Constitutional Forecast: Demise of the "State Action" Limit on the Equal Protection Guarantee, 66 Col.L. Rev. 855 (1966).

13. "Since we therefore deal here only with the bare terms of the Equal Protection Clause itself, nothing said in this opinion goes to the question of what kinds of other and broader legislation Congress might constitutionally enact under § 5 of the Fourteenth Amendment to implement that Clause or any other provision of the Amendment." 383 U.S. at 754–755, 86 S.Ct. at 1176.

Amendment rights. Hoffman v. Halden, *supra;* Huey v. Barloga, *supra.* In so holding we recognize that the citadel of state action is under heavy attack, but we reluctantly concede that as yet it has not fallen.

We are not deterred or persuaded otherwise by the recent Supreme Court case of Jones v. Alfred H. Mayer & Co., *supra.* The *Mayer* case is authoritative only as to the constitutionality of a statute, 42 U.S.C.A. § 1982, enacted pursuant to the Thirteenth and not the Fourteenth Amendment. While *Mayer* is certainly illustrative of the importance of Section 2 of the Thirteenth Amendment as a source of Congressional power,[14] it is not dispositive of the proposition that Congress, under Section 5 of the Fourteenth Amendment, may reach private conduct. Such an important and significant extension of the Fourteenth Amendment, though intimated in several recent Supreme Court decisions,[15] must

still await a specific and authoritative pronouncement by that Court.

■ We feel compelled to add that appellants' failure to state a cause of action under § 1985(3) is impeded by more than just limitations on the extent of Congressional power under the Fourteenth Amendment. While some of appellants' claims are of Fourteenth Amendment derivation, others such as the right to petition the government for redress of grievances, cf. United States v. Cruikshank, 1876, 92 U.S. 542, 552–553, 23 L.Ed. 588; Powe v. United States, 5 Cir. 1940, 109 F.2d 147, cert. denied, 309 U.S. 679, 60 S.Ct. 717, 84 L.Ed. 1023; Wilkins v. United States, 5 Cir. 1967, 376 F.2d 552, and the right to interstate travel and the use of streets and highways in interstate commerce,[16] United States v. Guest, 383 U.S. at 757–760, and 757; n. 13, 86 S.Ct. 1170, are attributes of national citizenship not sourced in the Fourteenth Amendment.[17]

14. We do not pass upon whether § 1985 (3) can be justified as reaching private conduct if read as an exercise of Congressional power under the Thirteenth Amendment, cf. United States v. Harris, 106 U.S. at 641, 1 S.Ct. 601, or whether *racially* motivated assaults may be considered "badges of slavery." Cf. Jones v. Alfred H. Mayer Co., 392 U.S. at 438–439, 88 S.Ct. at 2202, 20 L.Ed.2d at 1207.

15. United States v. Guest, *supra;* Katzenbach v. Morgan, 1966, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828; Heart of Atlanta Motel v. United States, 1964, 379 U.S. 241, 280, 292, 85 S.Ct. 348, 13 L.Ed.2d 258, 281, 288; Katzenbach v. McClung, 1964, 379 U.S. 294, 305, 85 S.Ct. 377, 13 L.Ed.2d 290, 299.

16. Compare the complaint in the case, *sub judice:*
"By their conspiracy and acts pursuant thereto, the defendants have wilfully and maliciously, * * * prevented the minor plaintiffs and their parents, * * * from enjoying and exercising * * * their rights to travel the public highways without restraint in the same terms as white citizens in Kemper County, Mississippi, * * *"
with the third paragraph of the indictment in United States v. Guest, 383

U.S. 745, 757, n. 13, 86 S.Ct. 1170, 16 L.Ed.2d 239:
"* * * the defendants conspire to injure, oppress, threaten, and intimidate Negro citizens of the United States in the free exercise and enjoyment of:
"'The right to the full and equal use on the same terms as white citizens of the public streets and highways in the vicinity of Athens, Georgia.'" 383 U.S. at 757, n. 13, 86 S.Ct. at 1177.

17. With reference to the right to travel, the Supreme Court said in a very significant footnote in United States v. Guest: "As emphasized in Mr. Justice Harlan's separate opinion, § 241 protects only against interference with rights secured by other federal laws or by the Constitution itself. *The right to interstate travel is a right that the Constitution itself guarantees,* as the cases cited in the text make clear. Although these cases in fact involved governmental interference with the right of free interstate travel, their reasoning fully supports the conclusion that the constitutional right of interstate travel is *a right secured against interference from any source whatever, whether governmental or private.* In this connection, it is important to reiterate that the right to

Unlike appellants' other claims, these rights are "fundamental to the concept of our Federal Union," 383 U.S. at 757, 86 S.Ct. at 1178, and implicit in our form of republican government.[18] It is well established that Congress has the power to legislate for their protection even against interference by private conduct.[19] Under these circumstances it is clear that appellants' failure to state a cause of action under § 1985(3) for violation of rights of national citizenship must derive from reasons other than constitutional limitations.

Turning to § 1985(3) itself and the cases which have construed it, we find that rights of national citizenship remain unredressed (when impaired by private conduct), not for want of Congressional power, but for want of a proper statutory vehicle to express it. The Supreme Court has instructed us that § 1985(3) does not have the statutory equipage for redress of private conspiracies. In Collins v. Hardyman, *supra,* the court held that § 1985(3) reached only conspiracies under color of law. The Court was probably led to this result by its doubts as to the constitutionality of the statute, yet it based its decision not on constitutional grounds, but upon a construction of the language of the statute itself.

*Collins* involved the disruption of a political meeting in Los Angeles County, California, that has been called in order to petition Congress in opposition to the Marshall Plan. The Democratic Club that called the meeting had been organized for the purpose of participating in the election of officers of the United States and for the purpose of engaging in public discussions on issues of national importance. In their complaint, plaintiffs alleged that they had been deprived of equal protection of the laws and privileges and immunities under the laws in that, among other deprivations, they had been denied their right to petition the government for redress of grievances.

The district court dismissed the complaint holding that the statute did not afford redress for invasion of civil rights at the hands of individuals. D.C., 80 F. Supp. 501. In reversing, the Court of Appeals relied on that part of § 1985(3) which provides damages for overt acts "whereby another is * * * deprived of having and exercising any right or privilege of a citizen of the United States." Hardyman v. Collins, 9 Cir. 1950, 183 F.2d 308, 314. The Court of Appeals also relied on the long line of cases developed under § 241:

"The delineation by the courts of the narrow area of rights which Congress has constitutional power to protect from individual invasion has developed through the application of what is now 18 U.S.C.A. § 241, originally enacted May 31, 1870. This statute has been applied to individual deprivations of the right to vote for federal offices, Ex parte Yarborough, 1884, 110 U.S.

travel freely from State to State finds constitutional protection that is quite *independent of the Fourteenth Amendment.*" (emphasis added) 383 U.S. at 759, n. 17, 86 S.Ct. at 1179.

18. "The right of the people peaceably to assemble for the purpose of petitioning Congress for a redress of grievances, or for anything else connected with the powers or the duties of the National Government, is an attribute of national citizenship and, as such, under the protection of any guarantied [sic] by, the United States. The very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of griev-

ances." United States v. Cruikshank, 92 U.S. at 552.

19. Ex parte Yarbrough, 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274 (1884); Guinn v. United States, 238 U.S. 347, 35 S.Ct. 926, 59 L.Ed. 1340 (1915); In Re Quarles, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080 (1895); Motes v. United States, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900); United States v. Waddell, 112 U.S. 76, 5 S.Ct. 35, 28 L. Ed. 673 (1884); Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892). See also, Feuerstein, Civil Rights Crimes and the Federal Power to Punish Private Individuals for interference with Federally Secured Rights, 19 Vand.L.Rev. 641, 651–665 (1966).

651, 4 S.Ct. 152, 28 L.Ed. 274; the right to enjoy the privileges granted by the homestead laws, United States v. Waddell, 1884, 112 U.S. 76, 5 S.Ct. 35, 28 L.Ed. 673; the right to protection from attack while in the custody of a federal marshal, Logan v. United States, 1892, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429; and the right to inform federal officers of violations of federal law, In re Quarles, 1895, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080; Motes v. United States, 1900, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150. The cases also indicate by way of dictum that the right to assemble for the purpose of discussing the policies of the federal Government and petitioning that Government for redress of grievances is within the scope of direct federal protection." 183 F.2d at 313

On the basis of these precedents, the Court of Appeals reinstated the plaintiffs' complaint. *Accord*, Robeson v. Fanelli, S.D.N.Y.1950, 94 F.Supp. 62. It distinguished the case of United States v. Harris, 1883, 106 U.S. 629, 1 S.Ct. 601, 27 L.Ed. 290, in which the criminal counterpart of § 1985(3) was declared unconstitutional, on the grounds that the portion of § 1985(3) which dealt with the rights of national citizens was clearly severable from the rest of the statute and was therefore insulated from constitutional infirmity.

The Supreme Court, in *Collins*, reversed the Court of Appeals and dismissed the complaint, taking the position that the statute was not severable. Nonetheless it avoided the constitutional

challenge raised by *Harris* and argued that privileges and immunities *under the laws* and equal protection *of the laws* required that there be "some manipulation of the law or its agencies." 341 U.S. at 661, 71 S.Ct. at 942. Without state involvement, the Court viewed appellants' claims as "no more a deprivation of 'equal protection' or of 'equal privileges and immunities' than it would be * * * to assault one neighbor without assaulting them all, or to libel some persons without mention of others." *Id.* The Court found that appellants' "rights *under the laws* and to protection *of the laws* remain untouched and equal to the rights of every other Californian * * *." *Id.* The Court concluded:

"We say nothing of the power of Congress to authorize such civil actions as respondents have commenced or otherwise to redress such grievances as they assert. We think that Congress has not, in the narrow class of conspiracies defined by this statute, included the conspiracy charged here. We therefore reach no constitutional questions." 341 U.S. at 662, 71 S.Ct. at 942.

This decision in *Collins*, because it is based on the language of § 1985(3), and not upon any considerations of Congressional power, is unaffected by any of the opinions in *Guest*, or by the opinion in *Mayer*. We are therefore bound to follow it until it is expressly overruled. We have serious doubts as to its continued vitality,[20] but we, as an inferior court, cannot expand the statutory girth of § 1985(3) when we are " * * * faced with a limiting Supreme Court de-

---

20. See Comment, Civil Actions for Damages Under the Federal Civil Rights Statutes, 45 Tex.L.Rev. 1015, 1018–1019: "The plain language of the statute and the circumstances surrounding its passage in 1871 indicate a congressional intent to protect the described civil rights *against* all private conspiracies. Nevertheless, in Collins v. Hardyman, the Supreme Court read the section respectively and imposed a requirement, as with section 1983, that the prohibited conduct be action under color of state law. The majority noted that the fourteenth amendment prohibits only certain state action and that this statute, like section 1983, was founded exclusively upon that amendment. Under the Court's interpretation, the only effective difference between the two sections is that one deals with individual action while the other deals with conspiracies. Recent Supreme Court decisions involving the federal criminal statute analogous to section 1985 raise some doubts about the reasoning of the *Collins* case, however, and seem to presage adoption of a more unrestricted interpretation of section 1985."

cision which, so far as we are told directly, remains good law." Jones v. Alfred H. Mayer Co., 379 F.2d at 43.

We conclude by noting that § 1985(3) is today a poor remnant of its original conception. Its criminal counterpart has been held unconstitutional, United States v. Harris, *supra,* and its own constitutionality cast in doubt. Its language has been greatly restricted, Collins v. Hardyman, *supra,* and its application is no longer in accord with its legislative history. The last is probably the most mystifying. § 241 and § 1985(3) have the same Reconstruction historicity.[21] They both speak of men going in disguise on the public highway and they both lack the language "under color of law" which appears so clearly in § 1983.[22] Every indication in the legislative history of the period suggests that the Congressional reconstructionists intended to make the streets and highways safe for the lately freed from private as well as from public traducers.[23] As said by Justice Frankfurter in United States v. Williams, 1951, 341 U.S. 70, 76, 71 S.Ct. 581, 95 L.Ed. 758, 763–764, decided during the same term as Collins:

"Men who 'go in disguise upon the public highway, or upon the premises of another' are not likely to be acting

in official capacities. The history of the times—the lawless activities of private bands, of which the Klan was the most conspicuous—explains why Congress dealt with both State disregard of the new constitutional prohibitions and private lawlessness. The sponsor of § 6 [now § 241] in the Senate made explicit that the purpose of his amendment was to control private conduct." 341 U.S. at 76, 71 S.Ct. at 584.

We are puzzled as to why this statement petraining to the legislative history of § 241 is not equally applicable to § 1985(3). Nor can we discern why "privileges and immunities under the laws" do not include privileges and immunities of national citizenship.[24] Judge Healy, dissenting in the Court of Appeals in *Collins,* was of the view that "privileges and immunities under the laws" was derivative from the Fourteenth Amendment and therefore limited the statute only to Fourteenth Amendment rights. His theory was that the similarity of the language used in § 1985(3) to "the wording of Section 1 of the Fourteenth Amendment shows that Congress, in choosing its language, was thinking * * * of that Amendment and its vindication." 183 F.2d at 315.

---

21. See footnote 20.

22. 42 U.S.C.A. § 1983.
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979.

23. Id., 45 Tex.L.Rev. at 1019, n. 27:
   "Congressman Pool, the sponsor of the federal criminal statute from which much of his measure in 1870:
   But, sir, individuals may prevent the exercise of the right of suffrage; individuals may prevent the enjoyment of other rights which are conferred up-

on the citizen by the fourteenth amendment, as well as trespass upon the right conferred by the fifteenth.
   Not only citizens, but organizations of citizens, conspiracies, may be and are, as we are told, in some of the States formed for that purpose. * * * I cannot see that it would be possible for appropriate legislation to be resorted to except as applicable to individuals who violate or attempt to violate these provisions. * * * It matters not whether these individuals be officers or whether they are acting upon their own responsibility. * * *
   Cong.Globe, 41st Cong., 2d Sess. 3611, 3613 (1870)."

24. "* * * the right to travel thus has respectable precedent to support its status as a privilege and immunity of national citizenship * * *."
   United States v. Guest, 383 U.S. at 766, 86 S.Ct. at 1182 (dissenting opinion).

This view is somewhat inconsistent with recent Supreme Court pronouncements on § 241. As noted in United States v. Price, quoting from Justice Holmes in United States v. Mosley:

"The source of this section [§ 241] in the doings of the Klu Klux and the like is obvious, and acts of violence obviously were in the mind of Congress. Naturally Congress put forth *all its powers.* * * *" (emphasis added)

Justices Burton, Black and Douglas expressed the same view of § 1985(3) in their dissenting opinion in *Collins.* Theirs was the position that Congress had the power, *quite independent of the Fourteenth Amendment,*[25] to create a federal cause of action for the abridgment of federally protected rights. Morever, they took the position that Congress had actually done so in § 1985(3):

"Congress certainly has the power to create a federal cause of action in favor of persons injured by private individuals through the abridgment of federally created constitutional rights. It seems to me that Congress has done just this in RS § 1980(3) [1985(3)]. This is not inconsistent with the principle underlying the Fourteenth Amendment. That Amendment prohibits the respective states from making laws abridging the privileges or immunities of citizens of the United States or denying to any person within the jurisdiction of a state the equal protection of the laws. Cases holding that those clauses are directed only at state action are not authority for the contention that Congress may not pass laws supporting rights which exist apart from the Fourteenth Amendment." 341 U.S. at 664, 71 S.Ct. at 943.

The solicitude recently shown by the Supreme Court in United States v. Guest, *supra,* for the protection of the right to travel as a "privilege and immunity of national citizenship," 383 U.S. at 766, 86 S.Ct. at 1182, raises some doubts as to the continued vitality of *Collins.*[26] Even more recently the Court has disapproved the practice of reading civil rights legislation more restrictively than either the history or the language of the statutes require:

"As we said in a somewhat different setting two Terms ago, 'We think that history leaves no doubt that, if we are to give [the law] the scope that its origins dictate, we must accord it a sweep as broad as its language.' United States v. Price, 383 U.S. 787, 801, 86 S.Ct. 1152, 1160 [16 L.Ed.2d 267, 276]. 'We are not at liberty to seek ingenious analytical instruments,' ibid., to carve from § 1982 an exception for private conduct—even though its application to such conduct in the present context is without established precedent." Jones v. Mayer Co., 392 U.S. at 437, 88 S.Ct. at 2202.

In view of these recent changes, it would not surprise us if Collins v. Hardyman were disapproved and if § 1985(3) were held to embrace private

---

25. See footnote 17 *supra.*

26. See footnote, 20, *supra.* See also Note. Federal Criminal Code Protects Rights Secured by Fourteenth Amendment, 20 Vand.L.Rev. 170, 176:

"A third immediate implication of the instant case [*Guest*], without reference to the separate opinions, is its possible effect upon application of the civil counterpart to section 241, which gives a victim of civil rights violations a cause of action for damages against the violator. Since this civil provision is similar in wording to section 241, its development has closely paralleled that of its criminal counterpart. In fact, the courts seem to consider holdings in both the criminal prosecutions and the civil actions when deciding either type of case. This practice has led to considerable confusion in the civil cases, where, for example, violations of equal protection rights give rise to a cause of action while denials of due process do not. If this parallelism in the interpretation of the civil and criminal sections continues, it would follow that the victim of any rights violation would now have a cause of action against the violator."

conspiracies to interfere with rights of national citizenship.[27] In the context of voting rights the statute has already been so applied.[28] See Paynes v. Lee, 5 Cir. 1967, 377 F.2d 61. And where Congress has regulated in the area of interstate transportation, the statute has likewise been invoked. Baldwin v. Morgan, 5 Cir. 1958, 251 F.2d 780, 791. For many years § 241 has been applied to private conspiracies against rights of national citizenship,[29] and why § 1985 (3) should be given a narrower compass when its constitutionality would be no further impaired [30] or its language further abused has mystified the commentators.[31] Nonetheless, *Collins* clearly denied redress for private interference with rights of national citizenship when it overruled the judgment of the Court of Appeals. Since we may not adopt what the Supreme Court has expressly

---

27. See the opinion of Mr. Justice Brennan in United States v. Guest, *supra*, where the *dissenting* opinion in Collins v. Hardyman is cited, 383 U.S. at 779, 86 S.Ct. 1170.

28. Paynes v. Lee, 5 Cir. 1967, 377 F.2d 61, was based upon the statutory specificity of § 1985(3) with reference to the right to vote:

"* * * or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an *elector for President or Vice President,* or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy * * *"

This section of the statute was not limited by the decision in *Collins:* 341 U.S. at 660, 71 S.Ct. 937. We distinguished *Collins* by saying:

"The denial of a Federal remedy against persons not acting under color of state law is only in cases where the asserted right stems from the Fourteenth Amendment and the claim is for damages resulting from an abridgment of privileges or immunities or a denial of equal protection of the laws. Such was the case of Collins v. Hardyman, supra. Such was the case in Wallach v. Cannon, 8th Cir. 1966, 357 F.2d 557, and in Shemaitis v. Froemke, 7th Cir. 1951, 189 F.2d 963. The Fourteenth Amendment is only a protection against the encroachment upon enumerated rights by or with the sanction of the State. The interference with a Federally protected right to vote is something more and something different. Moreover it has had the specific attention of Congress which has provided a specific remedy for interference by private individuals." 377 F.2d at 63-64.

29. See footnote 19, *supra.*

30. The court in Collins limited § 1985(3) to state action in part to avoid the constitutional complications discussed in Harris. It is not clear why this limitation had to be extended to rights *not* derivative from the Fourteenth Amendment, particularly when the court in construing § 241 has required state action only for Fourteenth Amendment rights.

31. Note, Collins v. Hardyman: More on the Civil Rights Act, 46 Ill.L.Rev. 931, 936:

"The Supreme Court has repeatedly upheld the constitutionality of the criminal sanctions of the Civil Rights Act and included within the area of its protection the right to vote for federal officers, the right to enjoy the privileges granted by the homestead laws of the United States, the right to protection from attack while in the custody of a federal marshal, and the right to inform federal officers of a violation of federal law. In these cases the Court did not require, as a prerequisite to federal protection, that the individuals charged must have acted under color or sanction of state law. Neither did they inquire as to the availability of remedial action under state law. Why then should the Court make such limitations under the civil sanctions of civil rights legislation? Under the decision of Connally v. General Construction Company, there is no distinction between the power of Congress to declare given conduct a crime and the ability to give a person injured by such conduct an action for damages."

See also, Note, Civil Rights—Federal Civil Rights Act § 47(3) Permits Civil Action Only Against Persons Acting Under Color of State Law, 100 U.Pa.L.Rev. 121.

rejected, we obediently abide the mandate in *Collins*.

The judgment of the district court in dismissing the complaint is

Affirmed.