**ÁLASKA STATE–OPERATED SCHOOL SYSTEM, a public corporation, Appellant,**

v.

**Paula M. MUELLER, Appellee.**

**No. 2138.**

Supreme Court of Alaska.

May 30, 1975.

Norman C. Gorsuch, Atty. Gen., Juneau, Anita Remerowski, Asst. Atty. Gen., Anchorage, for appellant.

John R. Strachan, Robinson, McCaskey, Strachan & Hoge, Anchorage, for appellee.

Before RABINOWITZ, Chief Justice, CONNOR and BOOCHEVER, Justices, and DIMOND, Justice Pro Tem.

## OPINION

DIMOND, Justice Pro Tem.

When suit is brought against the State of Alaska or against an agency or officer of the state, service of the summons and complaint must be made upon the Attorney General or his designee.[1]   Ordinarily, a de-

---

1.  Civ.R. 4(d)(7) and (8) provide:
    (d) *Summons—Personal Service.* The summons and complaint shall be served together.   The plaintiff shall furnish the person making service with such copies as are necessary.   Service shall be made as follows:

    .        .        .        .        .

    (7) *State of Alaska.*   Upon the state, by delivering a copy of the summons and the complaint personally to the attorney gen-

eral or to the person in the judicial district designated by him in a writing filed with the clerk of the court. and when service is made upon such person so designated, by also sending a copy of the summons and of the complaint by registered or certified mail to the Attorney General of Alaska at Juneau, Alaska.
    (8) *Officer of Agency of State.*   Upon an officer of agency of the state, by serving the State of Alaska as provided in the

fendant has 20 days within which to serve his answer after being served with the summons and complaint. But where the defendant is the state or an officer or agency thereof, 40 days, rather than 20 is allowed.[2]

Appellee, Paula Mueller, brought this action against the Alaska State-Operated School System, hereafter referred to as ASOS, for $346.00 in travel expenses incurred by her in getting to her teaching station in Adak. The Superintendent of Schools for ASOS was served with the summons and complaint, but the Attorney General was not. After 20 days had elapsed following service, Paula Mueller applied for and had entered a default judgment against ASOS since no answer or other responsive pleading had been filed by that time.

The Attorney General then moved to set aside the default judgment. He contended that this action was one against the state or a state agency, and since the Attorney General had not been served, proper service of the summons and complaint had not been effected. Alternatively, the Attorney General asserted that ASOS had 40 days within which to answer the complaint, and therefore a default judgment entered before the expiration of that time period was of no effect.

The motion to set aside the default judgment was denied by the superior court on the ground that the legislature intended that ASOS be an independent public corporation and not part of the state Department of Education, and therefore service

of process on the Attorney General was unnecessary. In so ruling, the court was in effect holding that this action was not one against the state or an agency of the state. Thus, the question presented for review on this appeal is whether ASOS is a state agency within the meaning of Civil Rules 4(d)(7) and (8) relating to service of process upon the state.

Article VII, section 1 of the Alaska Constitution provides in part:

> *Public Education.* The legislature shall by general law establish and maintain a system of public schools open to all children of the State, and may provide for other public educational institutions.

Pursuant to this constitutional mandate, the legislature enacted a general and comprehensive body of laws providing for the establishment and maintenance of public schools throughout the state.[3] Subject to statutes relating to public schools and the supervisory authority of the state Department of Education,[4] the management and control of schools in organized boroughs and home rule and first class cities outside boroughs is vested in the borough or city school district.[5] The area outside organized boroughs and cities is referred to as the "state-operated school district," [6] and this district is under the management and control of the Board of Directors of state-operated schools.[7] The purpose of the latter school system, as established by statute, is to provide public education in the unorganized borough.[8] It is these schools, referred to as the Alaska State-Operated

---

preceding paragraph of this rule, and by delivering a copy of the summons and of the complaint to such officer or agency. If the agency is a corporation, the copies shall be delivered as provided in paragraph (4) of this subdivision of this rule.

2. Civ.R. 12(a) provides in part as follows: The state or an officer or agency thereof shall serve an answer to the complaint or to a cross-claim, or a reply to a counterclaim, within 40 days after the service upon the attorney general of the pleading in which the claim is asserted.

3. Alaska Statutes, Title 14.

4. AS 14.07.020, .030 (relating to the Department of Education).

5. AS 14.12.010, .020; AS 29.33.050, AS 29.-43.030.

6. AS 14.12.010.

7. AS 14.12.020.

8. AS 14.08.010(a).

School System, with which we are here concerned.

ASOS enjoys a certain amount of autonomy and independence. The legislature has established it as a "state corporation."[9] In its corporate name it has the power to sue and to be sued, to receive and hold real and personal property, to contract and be contracted with, to adopt by-laws and administrative rules for the management and operation of state-operated schools, and to accept grants or loans from and contract with the federal government, the state, or its political subdivisions.[10] The Board of Directors of ASOS, consisting of nine members,[11] has extensive powers in the management and control of state-operated schools.[12]

On the other hand, ASOS is subject to considerable legislative and executive control. ASOS is entirely a creature of the legislature and derives all of its powers from that branch of our state government. Members of the Board of Directors of ASOS, appointed by the Governor, are subject to confirmation by the legislature.[13] The legislature provides the state funds necessary to operate and maintain the state-operated schools.[14]

The nine members of the Board of Directors of ASOS are appointed by the Governor and serve at his pleasure, notwithstanding the terms for which they are appointed.[15] The "exclusive" authority of the Board to manage and control all state-operated school matters is "subject to the state laws and the regulations promulgated by the state Board of Education."[16] The salary of the director of ASOS is subject

9. AS 14.08.020.

10. *Id.*

11. AS 14.08.030.

12. AS 14.08.090 provides in relevant part:
*Powers and duties of the board of directors.* The board of directors shall
    (1) develop a philosophy of education, principles, and goals for the state-operated school system;
    (2) select and employ the director of education for state-operated schools subject to the approval of the governor;
    (3) approve the employment of the professional administrators, teachers, and non-professional administrative personnel necessary to the operation of the state-operated schools;
    (4) establish the salaries to be paid the director of education and its regularly employed, certificated staff members, the director's salary being subject to the approval of the governor;
    (5) promulgate rules and regulations covering organization, policies, and procedures, and have printed copies available to all personnel;
    (6) initiate questions of policy for consideration and report by the director of education, and pass upon the recommendations of the director in matters of policy, appointment or dismissal of employees, salary schedules or personnel regulations, and other matters pertaining to the welfare of the schools;
    (7) require reports from the director concerning conditions of efficiency and needs of the schools, and take steps to appraise the effectiveness with which the schools are achieving the educational purposes of the school system;

    (10) designate the administrative employees authorized to direct disbursements from the school funds of the board of directors;

    (12) establish, maintain, operate, discontinue, and combine state-operated schools where it considers necessary;
    (13) provide for the construction, purchase, rental, maintenance, and equipment of the necessary school buildings or classrooms for the state-operated schools;
    (14) pay tuition and boarding or transportation costs of secondary school students in cases in which the establishment of state-operated secondary schools is unsound for economic or educational reasons.

13. AS 14.08.030.

14. AS 14.12.020. *See* § 17, ch. 147, SLA 1974, which reveals that, with the exception of federal program receipts, the bulk of the $43 million appropriated in 1974 for the operation and maintenance of ASOS came by way of direct appropriation by the legislature from the state's general fund.

15. AS 39.05.060(d). This section provides for the "[a]ppointment, qualifications, and terms of office of members of *departmental boards*, councils, or commissions" (emphasis added).

16. AS 14.08.050.

to the approval of the Governor.[17] The noncertificated employees of ASOS are subject to the provisions of the State Personnel Act.[18] The Board of Directors must cause the school accounts to be audited each year and must file a certified copy of the audit report with the Commissioner of Education.[19] The Board must submit to the Department of Education for approval all plans relating to the establishment, discontinuance, or combining of its schools, and may not execute such plans until they are approved.[20] Finally, the law provides that the ownership of real property used in relation to state-operated schools "shall remain vested in the state," with use permits to be given to ASOS, and that any construction required by ASOS is to be performed by the Department of Public Works.[21]

■ In balancing the autonomy of ASOS against its functional and organizational connections with the legislative and executive branches of government, we believe the scales weigh heavily in favor of the conclusion that for the purposes of the applicability of Civil Rule 4(d)(7) and (8) ASOS is an instrumentality or agency of the state, as opposed to being an entity which is "independent" of it. In the exercise of the powers conferred upon it by the legislature, ASOS is performing the clearly governmental function of furnishing education to the children of Alaska in the unorganized borough (for which the legislature is required to provide by article VII, section 1 of the constitution). Moreover, unlike local public school systems,[22] ASOS operates directly on behalf of and under the auspices of the state; its services act to the benefit of the state and the public generally as it performs those educational functions which, in organized boroughs and cities, have been assumed by political subdivisions of the state. In view of these considerations, ASOS' role as an arm of the state seems manifest. The fact that it was constituted as a body corporate with the power to sue and be sued does not militate against this conclusion.[23]

Ms. Mueller contends that support for her position that ASOS is not a state agency is found in legislative changes made in a number of education statutes in 1970,[24] subsequent to our decision in Begich v. Jefferson.[25] Prior to that time, the legislature had, for example, vested management and control of the operations of the state-operated schools in the State Department of Education. It was further

17. AS 14.08.090(4).

18. § 32, ch. 46, SLA 1970.

19. AS 14.08.090(9).

20. AS 14.08.100. The plans referred to shall be considered approved unless they are disapproved by the Department of Education within 120 days of submission.

21. § 33, ch. 46, SLA 1970.

22. See Kenai Peninsula Borough and The Home Insurance Co. v. State, 532 P.2d 1019 (Alaska 1975), where we held that a borough school district in furnishing transportation to its students was not acting as an agent for the state so as to impose liability upon the state. We stated:
    Our examination of the sparse authority on this subject indicates that authorized activities of such subdivisions as municipalities and school districts are almost universally considered to be independent actions not subjecting the state to liability, whereas when a state functions through use of some other type of agency or a private corporation, liability is more likely to ensue.
    532 P.2d at 1022–23 (footnotes omitted).

23. See Alaska State Housing Authority v. Dixon, 496 P.2d 649 (Alaska 1972); Walker v. Alaska State Mortgage Ass'n, 416 P.2d 245 (Alaska 1966); DeArmond v. Alaska State Development Corp., 376 P.2d 717 (Alaska 1962).

24. See ch. 46, SLA 1970.

25. 441 P.2d 27 (Alaska 1968), where we decided inter alia that superintendents and teachers of the state-operated school district are employees of the state of Alaska and as such hold "positions of profit" within the intendment of art. II, § 5 of the Alaska Constitution which prohibits legislators from holding any other office or position of profit under the United States or the state. We also specifically held that the state-operated school district is not a political subdivision of the state.

provided that the Department of Education was to furnish the money necessary to maintain and operate the state-operated school district. And in the definition section of the education laws, the legislature had defined the word "employer" in the state-operated school section of the statute as meaning the Department of Education.[26]

This was all changed in 1970. In that year the legislature created the state corporation known as the Alaska State-Operated School System,[27] and vested management and control of the state-operated school district in the Board of the State-Operated Schools rather than the Department of Education.[28] The legislature, rather than the Department, was to furnish necessary funds.[29] And in the definition section of the law, the meaning of the word "employer" was changed from the Department of Education to the Board of Directors of the State-Operated Schools.[30]

Those who wrote our constitution followed the traditional framework of American government. The governmental authority of the State of Alaska was distributed among three branches, the executive, the legislative and the judicial. Obviously, ASOS is not part of the judicial branch. And it is just as obvious that it is not within the legislative branch of government since it takes no part in the legislative function of enacting laws governing the people of the state.

■ This leaves, then the executive branch of government. ASOS falls within the executive branch because its sole function, as it was created by the legislature, is to execute or put into operation and effect in the unorganized borough the laws relating to public education enacted by the legislature.

The issue which Ms. Mueller's contention raises, therefore, is the status of ASOS within the executive branch of government. Article III, which deals with the executive, provides in section 22 that

> All executive and administrative offices, departments, and agencies of the state government and their respective functions, powers, and duties shall be allocated by law among and within not more than twenty principal departments, so as to group them as far as practicable according to major purposes. Regulatory, quasi-judicial, and temporary agencies may be established by law and need not be allocated within a principal department.

ASOS is not a regulatory, quasi-judicial or temporary agency, and no such contention is made here. It follows, then, that of the existing 17 principal departments of the executive branch of government identified under AS 44.15.010, the only one with which ASOS could be connected in terms of purpose and function is the Department of Education.[31] It is clear that prior

---

26. In *Begich* all of these factors were viewed by this Court as significant in deciding that the district's superintendents and teachers were employees of the State. 441 P.2d at 34.

27. § 1, ch. 46, SLA 1970 (codified as AS 14.08.020).

28. § 8, ch. 46, SLA 1970, amending AS 14.-12.020(a).

29. § 9, ch. 46, SLA 1970, amending AS 14.-12.020(c).

30. § 15, ch. 46, SLA 1970, amending AS 14.-20.207(2).

31. AS 44.15.010 provides:
*Offices and departments.* There are in the state government the following principal offices and departments:
(1) Office of the Governor

(2) Department of Administration
(3) Department of Law
(4) Department of Revenue
(5) Department of Education
(6) Department of Health and Social Services
(7) Department of Labor
(8) Department of Commerce
(9) Department of Military Affairs
(10) Department of Natural Resources
(11) Department of Fish and Game
(12) Department of Public Safety
(13) Department of Public Works
(14) Department of Economic Development
(15) Department of Highways
(16) Department of Environmental Conservation
(17) Department of Community and Regional Affairs

to 1970 the state-operated school system was functionally under the Department of Education. If, however, Paula Mueller is correct in her argument that the legislative enactments of 1970 completely removed the system from the Department of Education, then ASOS, unless deemed to be an entirely new and separate department, would be in a kind of limbo by itself apart from the rest of the executive branch.

Such a result would be entirely inconsistent with the plan of government contemplated by the framers of our constitution. As mentioned, ASOS performs governmental functions which are clearly executive in nature. It therefore necessarily follows that under article III, section 22 of the constitution this public corporate body must either be a new separate department of the executive branch of government, or an executive agency functionally if not nominally within and a part of the existing Department of Education.

It is difficult to impute to the legislature any intent to create ASOS as a separate principal department of government. It has not been so designated under AS 44.15.-010, and there is nothing in the legislation relating to education, or in the legislative history of the educational statutes, which would allow us to reach such a result. Furthermore, to create ASOS as a separate principal department of government might not be in accordance with the requirement that the allocation of executive and administrative agencies be among not more than 20 principal departments "so as to group them as far as practicable according to *major purposes*" (emphasis added).[32] The major purposes of the Department of Education and ASOS would appear to be the same in that both are concerned exclusively with providing public education for the children of the state. Consequently, we do not construe those statutory changes since *Begich* which grant a greater degree of autonomy and operational independence to ASOS to evidence a clear legislative intent to create a new principal executive department thereby.

Regardless, however, of whether it be deemed a new principal department or a subordinate agency within the Department of Education, we hold that the Alaska State-Operated School System is an agency of the state within the meaning of Civil Rules 4(d)(7) and (8) which require a summons and complaint in this case to be served upon the Attorney General or his designee, and within the meaning of Civil Rule 12(a) which allows a state agency 40 days after service within which to answer the complaint. Since service was not made on the Attorney General as required by rule, jurisdiction over ASOS was not obtained, and the default judgment entered against it was of no effect and must be set aside.[33] Because there was no jurisdiction, we need not reach Paula Mueller's final argument that ASOS must show that it has good cause and a meritorious defense before default will be set aside.

The default judgment against the Alaska State-Operated School System is set aside, and the case is remanded to the superior court for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded.

ERWIN and BURKE, JJ., not participating.

---

32. Alaska Const. art. III, § 22.

33. *Cf.* In the Matter of P.N., 533 P.2d 13 (Alaska, 1975); R.L.R. v. State, 487 P.2d 27, 40 (Alaska 1971); Hartwell v. Cooper, 380 P.2d 591 (Alaska 1963). Rule 4(d)(5) of the Federal Rules of Civil Procedure, upon which our Rules 4(d)(7) and (8) are patterned, is deemed to be mandatory for jurisdictional purposes. Wallach v. Cannon, 357 F.2d 557 (8th Cir. 1966); Messenger v. United States, 231 F.2d 328 (2d Cir. 1956).