**Mike BRADNER, Speaker of the House, Alaska State Legislature, et al., Appellants,**

v.

**Jay S. HAMMOND, Governor of the State of Alaska, Appellee.**

No. 2802.

Supreme Court of Alaska.

Aug. 2, 1976.

Terrance Sandalow, Ann Arbor, Mich., Billy G. Berrier, Juneau, for appellants.

Robert M. Johnson, Rodger W. Pegues, Asst. Attys. Gen., and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., RABIN-OWITZ and ERWIN, JJ., DIMOND, Justice Pro Tem., and TAYLOR, Superior Court Judge sitting as Justice Pro Tem.

### OPINION

RABINOWITZ, Justice.

This appeal arises from a declaratory judgment suit which appellants instituted in superior court seeking a declaration that Section 1 of Chapter 82, SLA 1975 is constitutional. This legislative measure effected significant changes in the procedures for appointment and removal of sub-cabinet officials, including deputy commis-sioners and division heads of the executive branch of Alaska's government.[1] Specifically, it removed certain division directors from the classified service and placed them in the partially exempt service, provided that the appointment of deputy heads of each principal executive department and 19 specified directors of divisions were subject to confirmation by the legislature in joint session, and it prescribed procedures pertaining to the confirmation process.

The legislative history of Chapter 82 discloses that on April 28, 1975, Alaska's Ninth State Legislature enacted Free Conference Committee Substitute to Senate

---

1. Chapter 82, SLA 1975 provides:
Section 1. AS 39.05.020 is amended to read:
Sec. 39.05.020. Appointment of department heads and other executive officers. The governor shall appoint the head of each principal executive department in the state government. Each appointment is subject to confirmation by a majority of the members of the legislature in joint session. The following executive appointments are also subject to confirmation by a majority of the members of the legislature in joint session:
(1) The deputy head of each principal executive department of the state;
(2) director, division of banking;
(3) director, division of insurance;
(4) director, division of family and childrens services;
(5) director, division of corrections;
(6) director, division of oil and gas;
(7) director, division of elections;
(8) director, division of policy planning and research;
(9) director, division of personnel;
(10) director, division of budget and management;
(11) director, division of medical assistance;
(12) director, division of mental health;
(13) director, division of public health;
(14) director, office of telecommunications;
(15) director, division of marine transportation;
(16) director, division of waters and harbors;
(17) director, division of lands;
(18) state geologist, division of geological and geophysical surveys;
(19) director, division of agriculture;
(20) director, division of aviation.

Section 2. AS 39.05.080(2) is amended to read:
(2) When appointments are presented to the legislature for confirmation,
(A) the presiding officer of each house shall assign the name of each appointee to a standing committee of that house for a hearing, report and recommendation; standing committees of the two houses assigned the same person's name for consideration may meet jointly to consider the qualifications of the person appointed and may issue either a separate or a joint report and recommendation concerning that person; then
(B) the legislature shall, before the end of the session in which the appointments are presented, in joint session assembled, act on the appointments by confirming or declining to confirm by a majority vote of all of the members the appointments presented.
Sec. 3. AS 39.25.040 is amended to read:
Sec. 39.25.040. Director of personnel. The head of the division of personnel is the director of personnel appointed by the commissioner of administration and responsible to the commissioner of administration for the execution of the duties and responsibilities imposed by this chapter and the rules adopted under this chapter. The director of personnel must have at least three years of practical working experience in the field of personnel administration.
Sec. 4. AS 39.25.120(2) is amended to read:
(2) the directors, division of personnel, division of mental health, division of public health, division of medical assistance, and those other directors of the major divisions of the principal departments of the executive branch as are specifically designated by the governor; . . . .

Bill 98. After initial passage, Governor Hammond vetoed the bill on the ground that Section 1 thereof impinged upon the executive power of appointment. On May 21, 1975, the legislature, in joint session, overrode the veto. The act then became law the following day as Chapter 82 of the 1975 Session Laws of Alaska (hereinafter Chapter 82).

Subsequent to enactment of Chapter 82, Governor Hammond appointed persons to posts affected by the Act's provisions. Under AS 39.05.080(1), part of the codification of Chapter 82, the governor was obliged to present to the legislature for confirmation the names of these persons. The governor refused to do so. Appellants then commenced this action for a declaratory judgment[2] of the constitutionality of Chapter 82. The superior court granted Governor Hammond's motion for summary judgment, declaring Section 1 unconstitutional. This appeal followed.

The controlling constitutional provisions we are called on to interpret here are contained in Article III of Alaska's constitution and concern the appointive powers of the governor.[3] Article III, Section 1 provides:

> The executive power of the State is vested in the governor.

Article III, Section 25 further provides that:

> The head of each principal department shall be a single executive unless otherwise provided by law. He shall be appointed by the governor, subject to confirmation by a majority of the members of the legislature in joint session, and shall serve at the pleasure of the governor, except as otherwise provided in this article with respect to the secretary of State. The heads of all principal departments shall be citizens of the United States.

This provision explicitly empowers the governor to appoint and dismiss the head of each principal department. It subjects these executive appointments to confirmation by a majority of the members of the legislature in joint session. Article III, Section 26 treats related offices and provides:

> When a board or commission is at the head of a principal department or a regulatory or quasi-judicial agency, its members shall be appointed by the governor, subject to confirmation by a majority of the members of the legislature in joint session, and may be removed as provided by law. They shall be citizens of the United States. The board or commission may appoint a principal executive officer when authorized by law, but the appointment shall be subject to the approval of the governor.

As with Section 25, Section 26 vests the power of appointment in the governor and the power to confirm in the legislature in joint session. Removal of Section 26 board or commission members is as provided by law and, therefore, not necessarily at the governor's pleasure.

As analyzed by appellants, the sole question in this appeal is whether Sections 25 and 26 of Article III describe the outer

---

2. AS 22.10.020(b) provides:
   In case of an actual controversy within the state, the superior court, upon the filing of an appropriate pleading, may declare the rights and legal relations of an interested party seeking the declaration, whether or not further relief is or could be sought. The declaration has the force and effect of a final judgment or decree and is reviewable as such. Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against an adverse party whose rights have been determined by the judgment.

3. There is no dispute that our constitution was designed with a strong executive in mind. Executive Committee Chairman Victor Rivers reported to the floor that "[w]e are all strongly agreed on the principle of the strong executive." Alaska Constitutional Convention Proceedings at 1984 (hereinafter ACCP). *Accord*, ACCP at 1102, 1741, 1986–88, 2038, 3103.

limits of the legislature's confirmation authority, or whether the legislature may by statute require confirmation of other high-level, policy-making officials within the executive branch. In arguing that Sections 25 and 26 only establish a constitutional minimum requiring that certain appointments within the executive branch must be legislatively confirmed, appellants emphasize that neither Section 25 nor 26 prohibits the legislature from requiring confirmation of other executive appointments. Admitting that the power to enact legislative confirmation requirements in addition to those provided for in Sections 25 and 26 is not explicitly conferred on the legislature by Alaska's constitution, appellants advance the contention that the validity of Chapter 82 turns on whether such enactments are within the ambit of the constitution's general grant of legislative power to the legislative branch of Alaska's government.[4]

In opposition, appellee Hammond primarily argues that the power to confirm executive officers is an executive power which may be lawfully exercised by the legislature only to the extent granted by the Alaska Constitution. Viewed in this manner, appellee analyzes the power to confirm executive officers as part of the appointment process, incapable of existence independent of the power of appointment, and characterizes this confirmation authority as a power "super-added" to the legislature's general legislative powers. Thus, appellee would find that Sections 25 and 26 set the maximum rather than the minimum parameters of the legislature's power to confirm appointments of executive officers. This follows, according to appellee, from the fact that legislative confirmation is a delegated function taken from an executive function, and thus the breadth of this delegated authority must be strictly construed.[5] Applying this strict interpretative criterion, appellee concludes that Chapter 82 is violative of the separation of

4. Article II, Section 1 of the Alaska Constitution provides in part that "[t]he legislative power of the State is vested in a legislature . . . ."

In support of their thesis that the confirmation power is within the legislative power grant of Article II, Section 1, appellants contend that the record of the constitutional convention demonstrates that the delegates "clearly understood that the legislature would have authority to enact statutory confirmation requirements." Additionally, appellants point to the circumstance that since the inception of statehood both the executive and legislative branches "have consistently acted upon the understanding that the legislature has such authority" and this longstanding interpretation should be accorded significant weight by the judiciary in matters of constitutional interpretation. *Okanogan Indians v. United States* (The Pocket Veto Case) 279 U.S. 655, 49 S.Ct. 463, 73 L.Ed. 894 (1929) ; *Hampton v. United States*, 276 U.S. 394, 48 S.Ct. 348, 72 L.Ed. 624 (1928) ; *Downes v. Bidwell*, 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088 (1901) ; *see generally* 16 Am.Jur.2d Constitutional Law § 83 (1964) ; 16 C.J.S. Constitutional Law §§ 32–34 (1956).

In addition appellants emphasize that this interpretation dates back to the first years of statehood. Contemporaneous interpretation of fundamental law by those participating in its drafting has traditionally been viewed as especially weighty evidence of the framers' intent. *Myers v. United States*, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160 (1926) ; *Cooper Mfg. Co. v. Ferguson*, 113 U.S. 727, 5 S.Ct. 739, 28 L.Ed. 1137 (1885) ; *Norfolk & W. Ry. Co. v. Board of Public Works*, 124 W.Va. 562, 21 S.E.2d 143 (1942) ; *Jones v. Williams*, 121 Tex. 94, 45 S.W.2d 130 (1931).

5. Countering appellants' contention, appellee's reading of Alaska's constitutional history demonstrates "an intent by the constitutional framers to restrict legislative confirmation of those officers set forth in Art. III, §§ 25 and 26."

The attorney general candidly admitted at oral argument that examination of practice between the legislative and executive branches since statehood indicates that the executive has at least acquiesced to legislative confirmation of certain subcabinet officials. However, he argued that the political reality of a legislature dominated by the same party as that of the governor, as well as the minor interference such intervention created, indicates that the executive stance in the past should not be read as a "constitutional interpretation by a coordinate branch of government," but rather as a product of a realistic ordering of executive goals at the time.

powers doctrine implied in Alaska's constitution.

After study of the excellent briefs and oral arguments of respective counsel, on March 25, 1976, this court issued an order affirming the superior court's declaration that Section 1, Chapter 82, SLA 1975 is unconstitutional. In this order we further indicated that a full opinion would be issued in due course.[6]

In *Alaska State-Operated School System v. Mueller*, 536 P.2d 99, 103 (Alaska 1975), we observed that "[t]hose who wrote our constitution followed the traditional framework of American government. The governmental authority of the State of Alaska was distributed among the three branches, the executive, the legislative and the judicial." Analyzing this tripartite form of government provided for Alaska, this court concluded, in *Public Defender Agency v. Superior Court, Third Judicial District*, 534 P.2d 947, 950 (Alaska 1975), that ". . . it can be fairly implied that this state does recognize the sep-

aration of powers doctrine."[7] Our recent opinion in *Continental Insurance Cos. v. Bayless & Roberts, Inc.*, 548 P.2d 398, 410–11 (Alaska 1976), acknowledges that the underlying rationale of the doctrine of separation of powers is the avoidance of tyrannical aggrandizement of power by a single branch of government through the mechanism of diffusion of governmental powers.[8] It it clear that the doctrine is not a common law concept; it is, however, a brooding omnipresence by virtue of its conceptually central role in the structure of American constitutional government.

A problem inherent in applying the doctrine of "separation of powers" stems from the fact that the doctrine is descriptive of only one facet of American government. The complementary doctrine of checks and balances must of necessity be considered in determining the scope of the doctrine of separation of powers.[9] Both doctrines address and are designed to resolve the problem of efficient government versus tyranical government[10] and have as their goal

---

6. At oral argument respective counsel advised that if a decision was not forthcoming in the immediate future, Governor Hammond, without prejudice to his position in this appeal, intended to submit the names of various subcabinet appointments to the legislature in order to facilitate confirmation hearings. Our March order was in response to these disclosed time constraints.

7. In *Public Defender Agency v. Superior Court, Third Judicial District*, 534 P.2d 947, 950 (Alaska 1975), we also said that "[a]lthough the Alaska Constitution does not expressly address itself to the doctrine of separation of powers, we have noted that often what is implied is as much a part of the constitution as what is expressed. *Wade v. Nolan*, 414 P.2d 689, 698 (Alaska 1966)."

In reaching this conclusion that the doctrine of separation of powers is implicit in the Alaska Constitution, we cited *Lira v. Billings*, 196 Kan. 726, 414 P.2d 13, 16 (1966), where the Kansas Supreme Court acknowledged that the doctrine is implied from the existence of three separate constitutional provisions calling for three branches of government.

8. *Continental* dealt in part with the inherent contempt powers of the courts of Alaska. There we observed that the inherent power

to punish for contempt exists independently of statute and that although the legislature may regulate the procedure and enlarge the power, it cannot ". . . . 'without trenching upon the constitutional powers of the court, and destroying the autonomy of that system of checks and balances which is one of the chief features of our triple-department form of government, fetter the power itself.'" *Continental Ins. Cos. v. Bayless & Roberts, Inc.*, 548 P.2d 398, 410 (Alaska 1976), quoting *In re Shortridge*, 99 Cal. 526, 528, 34 P. 227, 229 (1893).

The doctrine prohibits one branch from encroaching upon and exercising the powers of another branch. *Myers v. United States*, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160 (1926); *Giss v. Jordan*, 82 Ariz. 152, 309 P.2d 779 (1957).

9. ". . . a dynamic relationship of cooperation and conflict. . . ." R. Tresolini & M. Shapiro, American Constitutional Law 9 (3d ed. 1970) [hereinafter Tresolini].

10. Tresolini, *supra* note 9, at 11. *Compare O'Donoghue v. United States*, 289 U.S. 516, 530, 53 S.Ct. 740, 77 L.Ed. 1356, 1360 (1933) *and United Public Workers of America v. Mitchell*, 330 U.S. 75, 91, 67 S.Ct. 556, 565, 91 L.Ed. 754, 768 (1947).

the protection of the electorate from tyranny.[11] In the instant appeal, the parties, in recognition of the controlling nature of the issue, dispute the meaning of the doctrine of separation of powers, and its implications for the determination as to whether Chapter 82 is violative of Alaska's constitution. In our view, the doctrine is of importance to the resolution of the merits of this appeal, for if the doctrine clearly precludes legislative intervention (by confirmation) in the appointment of executive officials, or requires "strict departmentalization," then Chapter 82, which purports to authorize legislative "meddling" in the exercise of an executive power, is unconstitutional because it would be violative of separation of powers requirements.

In determining if Chapter 82 violates the doctrine of separation of powers, which is implicit in Alaska's constitution, it is necessary to answer the threshold question whether the appointment of executive officers is a legislative or executive function. Under the structure envisaged by Alaska's fundamental charter, the legislative power of the state is vested in the legislature,[12] the executive power in the governor,[13] and the judicial power in a supreme court, a superior court and such additional courts as established by the legislature.[14]

Appellee contends that the appointment of executive officers is an executive function.[15] We find appellee's contention most persuasive. In addition to vesting the executive power of the state in the governor, Section 16 of Article III provides that "[t]he governor shall be responsible for the faithful execution of the laws." In view of the responsibilities imposed by Section 16, and the authority granted by Section 1, the governor is necessarily clothed with the power to appoint subordinate executive officers to aid him in carrying out the laws of Alaska.[16] Thus, we conclude that the appointment of executive officers is an executive function;[17] for without such a power, the responsibility for executing executive duties would be diffused and the goal of separation of branches of government, avoiding too

---

11. Justice Brandeis wrote, dissenting in *Myers v. United States*, 272 U.S. 52, 293–95, 47 S.Ct. 21, 85, 71 L.Ed. 160, 242–43 (1926):

> The doctrine of the separation of powers was adopted by the Convention of 1787 not to promote efficiency but to preclude the exercise of arbitrary power. The purpose was not to avoid friction, but, by means of the inevitable friction incident to the distribution of the governmental powers among three departments, to save the people from autocracy. . . . In America, as in England, the conviction prevailed then that the people must look to representation assemblies for the protection of their liberties. And protection of the individual, even if he be an official, from the arbitrary or capricious exercise of power was then believed to be an essential of free government.

*Compare* C. Antieau, 2 Modern Constitutional Law § 11:13, at 200 (1st ed. 1969):

> The doctrine of separation of powers was deemed necessary by the framers of the Constitution for two principal purposes: first, to protect the liberty of the citizen; and second, to safeguard the independence of each branch of the government and protect it from domination and interference by the others.

*Cf. Warren v. Boucher*, 543 P.2d 731, 734, 737 (Alaska 1975).

12. Art. II, § 1, Alaska Const.

13. Art. III, § 1, Alaska Const.

14. Art. IV, § 1, Alaska Const.

15. There is no dispute here that the appointees subjected to legislative confirmation by Chapter 82 are executive officers.

16. *Ahearn v. Bailey*, 104 Ariz. 250, 451 P.2d 30 (1969).

17. In *Springer v. Philippine Islands*, 277 U.S. 189, 202, 48 S.Ct. 480, 482, 72 L.Ed. 845, 849 (1927), the Supreme Court said:

> Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement. The latter are executive functions.

*See also Myers v. United States*, 272 U.S. 56, 115–16, 47 S.Ct. 21, 24–25, 71 L.Ed. 160, 165–66 (1926).

great a concentration of power in one branch, would be defeated.

■ Given our conclusion that under Alaska's constitution the appointment of subordinate executive officers by the governor is an executive function, it is then necessary to determine the nature of the legislature's confirmation powers. Here we are in agreement with appellee's analysis that under Alaska's constitution confirmation is a specific attribute of the appointive power of the executive.[18] Other courts which have been called upon to resolve this issue have been unanimous in their holdings that confirmation is not a distinct legislative power, but rather a part of the executive power of appointment which has in turn been delegated in some specific instances by constitution to the legislative branch of government.[19]

In light of the nature of the legislature's power of confirmation, the question whether Sections 25 and 26 of Article III describe the outer limits of the legislature's confirmation authority, or whether the leg-

islature may by statute require confirmation of other high-level, policy making officials within the executive branch, admits of but one resolution. As to this issue, we think the provisions of Sections 25 and 26 of Article III are clear and unambiguous.[20] Thus, we conclude that Sections 25 and 26 mark the full reach of the delegated, or shared, appointive function to Alaska's legislative branch of government.[21]

■ The lack of ambiguity in Sections 25 and 26 of Article III of the Alaska Constitution mandate that this court interpret these express provisions as embodying not only the maximum parameters of the delegation of the executive appointive authority through the legislative confirmation function but, further, that they delineate the full extent of the constitution's express grant to the legislative branch of checks on the governor's power to appoint subordinate executive officers. In our view, the separation of powers doctrine requires that the blending of governmental powers will not be inferred in the absence of an express constitutional provision.[22]

18. In *Myers v. United States*, 272 U.S. 56, 169, 47 S.Ct. 21, 43, 71 L.Ed. 160, 187 (1926), the Supreme Court termed confirmation a power "super added" to those possessed by the legislature.

19. *Myers v. United States*, 272 U.S. 56, 138–39, 47 S.Ct. 21, 32–33, 71 L.Ed. 160, 174–75 (1926); *Wittler v. Baumgartner*, 180 Neb. 446, 144 N.W.2d 62, 67 (1966); *Spears v. Davis*, 398 S.W.2d 921 (Tex.1966); *Walker v. Baker*, 145 Tex. 121, 196 S.W.2d 324 (1946); *State v. Dowling*, 167 La. 907, 120 So. 593 (1928); *People v. Shawver*, 30 Wyo. 366, 222 P. 11 (1924).

20. *Compare Warwick v. State ex rel. Chance*, 548 P.2d 384, 391–96 (Alaska 1976).

21. In *O'Donoghue v. United States*, 289 U.S. 516, 530, 53 S.Ct. 740, 743, 77 L.Ed. 1356 (1933) (emphasis added), the Supreme court said:
The Constitution, in distributing the powers of government, creates three distinct and separate departments—the legislative, the executive, and the judicial. This separation is not merely a matter of convenience or of governmental mechanism. Its object is basic and vital, *Springer v. Philippine Islands*, 277 U.S. 189, 201, 48 S.Ct. 480, 72 L.Ed. 845; namely, to preclude a com-

mingling of these essentially different powers of government in the same hands. *And this object is none the less apparent and controlling because there is to be found in the Constitution an occasional specific provision conferring upon a given department certain functions, which, by their nature, would otherwise fall within the general scope of the powers of another.* Such exceptions serve rather to emphasize the generally inviolate character of the plan.

22. *Compare Leege v. Martin*, 379 P.2d 447, 450 (Alaska 1963). *See also State v. Campbell*, 536 P.2d 105, 110–11 (Alaska 1975), where we said (footnotes omitted):
This court is admittedly under a duty to reconcile, whenever possible, challenged legislation with the constitution by rendering a construction that would harmonize the statutory language with specific constitutional provisions. However, in fulfilling that duty, the extent to which the express language of the provision can be altered and departed from and the extent to which the infirmities can be rectified by the use of implied terms is limited by the constitutionally decreed separation of powers which prohibits this court from enacting legislation or redrafting defective statutes.

To hold otherwise would emasculate the restraints engendered by the doctrine of separation of powers and result in potentially serious encroachments upon the executive by the legislative branch, because there would be no logical termination point to the legislature's confirmation of executive appointments.[23]

The superior court's judgment is Affirmed.

CONNOR and BURKE, JJ., not participating.

---

**23.** Our holding makes it unnecessary to discuss any of the other arguments advanced in this appeal.