WINFREE, Justice,
concurring.
Statutes are presumed to be constitutional, and the party challenging a statute's constitutionality has the burden of persuasion; doubts are resolved in favor of constitutionality.[1] Although I have considerable doubt about the constitutionality of the statutorily required local contribution (RLC) public schools funding component, I cannot con-clide that the presumption has been 'over come in this case. I therefore agree that the superior court's primary decision-that the RLC is an unconstitutional dedicated tax-should be vacated. But I do not rule out an ultimate conclusion that the RLC is unconstitutional, as a dedicated tak or otherwise, and therefore do not jdin the court's analysis or decision on this point.[2] In my view the question cannot be answered definitively without a full interpretation and understanding of the Alaska Constitution's public schools clause, which, apparently for strategic reasons, the parties did not confront.
Addressing how the RLC has every appearance of a dedicated tax warrants a brief discussion of the public schools clause. Article VII, section 1 of the Alaska Constitution states in relevant part: "The legislature shall by general law establish and maintain a system of public schools open to all children of the State. ..."
We addressed this provision in Macauley v.. Hildebrand,[3] when we reversed a superior court decision allowing a borough to require that a non-consenting borough school district use the borough's centralized system for accounting control over funds appropriated to *103 the school district.[4] An existing statute allowed centralized accounting upon the school district's consent, and the issue before us was the validity of the borough ordinance conflicting with the statute.[5] We stated the general rule that, notwithstanding the constitution granting broad powers to home rule municipalities,[6] "the determination of whether a home rule municipality can enforce an ordinance which conflicts with a state statute depends on whether the matter regulated is of statewide or local concern."[7] We held that the question was controlled by article VII, section 1:
This constitutional mandate for pervasive state authority in the field of education could not be more clear. First, the language is mandatory, not permissive. Second, the section not only requires that the legislature "establish" a school system, but also gives to that body the continuing obligation to "maintain" the system; Pinaily, the provision is unqualified; no other unit of government shares "responszbzlzty or ou-thority. [8]
We later confirmed that article VII, section 1's mandate that the legislature establish and maintain a public schools, system has a dual nature: "It imposes a [constitutional] duty upon the state legislature, and it confers upon Alaska school age children a [constitutional] right to education." [9]
In what otherwise is a vacuum the RLC has all the hallmarks of an unconstitutional dedicated tax. The RLC is a State-imposed mandate that municipalities raise specified funds for the State's public schools system; it is a revenue source for the State-and a tax by any other name remains a tax [10]-and the revenues are dedicated to the State's public schools system even though they never enter the State's treasury.[11]
I find unpersuasive the court's conclusion that the RLC is exempt from the dedicated tax prohibition because it is a post-statehood continuation of a territorial dedicated tax or a cooperative effort to establish and maintain public sehools..> First, the RLC was not a part of the territorial municipal school funding system,. - (The-territorial tax dedicated to schools discussed at the constitutional convention was a tebaceo tax. earmarked for school construction.[12]) In the territorial. system municipal school districts were required to determine their own budgets and local tax-funding levels, but were promised some level of territorial reimbursement. Now the State determines a foundational "basic need" for all school districts and requires municipalities to fund specific amounts of that "basic need" in their school districts, | The territorial system did not include a dedicated tax on municipalities; the current system appears to do so. Second, the State has the constitutional duty to establish and maintain the public schools system in Alaska, not municipalities. It is difficult to understand. how mandatory delegation of functions and municipal funding for the State's public schools system can be a cooperative effort. More importantly, the court misperceives our : earlier discussion about funding cooperative efforts-we did not suggest the framers approved of a state tax dedicated to a cooperative effort, but rather approved of dedicating State revenues, after they reach the State treasury, to a cooperative effort (and other uses of revenues).[13]
What then gives me pause? By apparent design, the tail may be wagging the dog-the parties appear to be using the dedicated tax *104 clause to define the pubhc schools clauses limits,
If we focus solely on the constitutional prohibition of dedicated taxes and conclude that the RLC is a dedicated tax, we may be inferentially but necessarily concluding that the public schools clause is a constitutional mandate that the State alone must provide the funds necessary to meet at least minimum constitutional requirements for the statewide unified public schools system.[14] Under. this view municipal contributions to local: public schools may not be compelled, but may be volunteered to supplement State funding to enhanee local educational opportunities. This would be a remarkable conclu-ston to reach without ever considering the public schools clause.[15] ~
I certainly do not suggest that this interpretation of the public schools clause would be incorrect. Lookmg only at the constitutional language and our limited case law, a credible argument can be made that the constitution requires funding the public schools system in a significantly different manner than in termtonal days.[16] The constitution mandates that the State, through the legislature, "establish and maintain" a public schools system,[17] and our case law establishes both that it is a unified public schools system [18] and that "no other unit of government" shares the State's obligation.[19] This seems inconsistent with a RLC; if the current RLC is allowable, the State theoretically could craft a RLC compelling a municipality to pay for all of its public schools system costs without any State contribution whatsoever,[20]
On the other hand the public schools clause does not expressly provide that the State must fund the statewide public schools system.[21] Before statehood the territory did not alone fund municipal schools,[22] and there was little digcussion of the public schools clause at the constitutional convention.[23] And as the court notes, shortly after statehood the legislature created a public schools funding framework inconsistent with the notion that the State is solely obligated to fund the public schools system.[24] Perhaps, as the *105 court concludes-but not for its stated reasons-the RLC is constitutionally viable. But this conclusion may also inferentially and necessarily require the conclusion that the State does not have a constitutional duty to fund the statewide public schools system.
I am left with the following conclusions, If the public schools clause requires that the statewide schools system be funded to a constitutionally acceptable minimum by the State, then the RLC likely is an unconstitutional dedicated tax, If the public schools clause allows the legislature to require local funding for the statewide unified schools system, then, depending on its parameters for requiring local funding, the RLC may or may not be an unconstitutional dedicated tax. But, deliberately, the interpretation of the public schools clause was not litigated in the superior court and, therefore, was not meaningfully briefed in this appeal. Although I have considerable doubt that the RLC is constitutional, on this record and briefing I must resolve that doubt in favor of the presumption that it is constitutional.

. Alaskans for a Common Language, Inc. v. Kritz, 170 P.3d 183, 192 (Alaska 2007).

. I agree with the court's analysis and conclusion affirming the superior court's secondary decision that the RLC does not violate the Alaska Constitution's appropriations .or governor's veto clauses.

. 491 P.2d 120 (Alaska 1971).

, Id. at 121-22.

. Id. at 121.

. Cf. Alaska Const. art. X, § 11.

. Macauley, 491 P.2d at 122 & n. 4.

 . Id. at 122 (emphasis added) (footnote omitted) + (quoting Alaska Const. art. VII, § 1). We also + noted that the legislature's delegation of "certain educational functions" to local school boards "does not diminish this constitutionally mandated state control over education." Id.

. Hootch v. Alaska State-Operated Sch. Sys., 536 P.2d 793, 799 (Alaska 1975).

. See State v. Alex, 646 P.2d 203, 208-10 (Alaska 1982).

. See id. at 207-08.

. See 4 Proceedings of the Alaska Constitutional Convention (PACC) 2370 (Jan. 17, 1956).

. Alex, 646 P.2d at 209-10.

. Cf. Matanuska-Susitna Borough Sch. Dist. v. State, 931 P.2d 391, 405 (Alaska 1997) (Matthews, J., Joined by Rabinowitz, J., concurrxng) (noting public schools clause nught support a constitutional claim when funds "are insufficient to pay for a level of education which meets . standards of minimal adequacy”),l

, I recogmze that in State v. Alex, 646 P.2d at 210-11, we concluded that the legislature's general constitutional authority over natural re- . sources could not be construed to override the constitutional prohibition of a dedicated tax, an analysis that may apply in this context as well. But I decline to apply it in rote fashion without a full explication and understanding of the public schools clause.

. Cf. Opinion, pp. 12-13.

, - Alaska Const. art, VIL § 1.

, Hootch v. Alaska State-Operated Sch. Sys., 536 P.2d 793, 799 (Alaska 1975).

. Macauley v. Hildebrand, 491 P.2d 120, 122 (Alaska 1971).

. This could have been possible in the territorial system because municipal school districts were required to set their own public schools budgets and related tax levels and then hope for territorial reimbursement. | But this also seems inconsistent with the subsequent constitutional directive 'that' the State, through the legislature, establish cand maintain a statewide public schools system.
An interesting question not before us is whether the State could avoid its constitutional obligation to maintain a statewide unified public schools system by refusing to fund school operations if a municipality does not comply with the RLC mandate. See AS 14.17.410(d) (providing that if the RLC is not made, the State will not provide any school funds); of. Matanuska-Susitna Borough Sch. Dist. v. State, 931 P.2d 391, 405 (Alaska 1997) (Matthews, J.,; joined by Rabinow-itz, J., concurring) (noting public schools clause might support a constitutional claim when funds ~"are insufficient to pay for a level of education which meets standards of minimal adequacy").

. Cf. Alaska Const. art, VIL, § 1.

, See Opinion, pp. 12-13.

. See Victor Fiscrer, Auaska's Constrturionar Con-vexnrion 140 (1975) ("Except for the proposed prohibition of public funds being used for direct benefit of private educational institutions, the [public education] article was not controversial. Lack of disagreement was due to the fact that the . functions covered by the article were already being carried out under the territorial govern- . ment.").

. See Opinion, pp. 21-23. The court states that this reflects the framers' intent that the State *105 could mandaté local ' contributions to the statewide schools system, citing Bradner v. Hammond, 553 P.2d 1, 4 n. 4 (Alaska 1976) ("Contemporaneous mterpretanon of fundamental law by those participating in its drafting has traditionally been viewed as especially weighty evidence of the framers' intent."). By my count 10 constitution'al delegates were in the 60-member 1961-62 legislature: - Delegates Coghill; - Hellenthal, McNealy, McNees, Metcalf, Nolan, Peratrovich, Smith, Sweeney, and Taylor.